John F. KURNICK and Celia Kurnick, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12632.

United States Court of Appeals Sixth Circuit.

April 19, 1956.

J. P. Mikesell, Detroit, Mich., J. P. Mikesell, E. Reed Hunt, Detroit, Mich., on brief, for petitioners.

S. Dee Hanson, Washington, D. C., H. Brian Holland, Ellis N. Slack, John J. Kelley, Jr., Washington, D. C., on brief, for respondent.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

PER CURIAM.

This case arises out of a petition to review a decision of the Tax Court finding deficiencies against petitioners and imposing penalties for fraud. The Commissioner determined deficiencies and penalties as follows for the years 1943 to 1950:

| YEAR | TAX | DEFICIENCY | SECTION 293(b) PENALTY |
|------|-----|-----------|------------------------|
| 1943 | Income and Victory | $ 461.77 | $ 230.89 |
| 1944 | Income | 2,318.66 | 1,566.23 |
| 1945 | Income | 2,590.04 | 1,295.02 |
| 1946 | Income | 1,819.35 | 909.68 |
| 1947 | Income | 1,627.61 | 813.81 |
| 1948 | Income | 726.36 | 363.18 |
| 1949 | Income | 1,448.92 | 724.46 |
| 1950 | Income | 876.44 | 438.22 |

The Tax Court materially reduced the deficiencies but retained penalties for fraud.

The case arises out of the following facts:

Petitioners, husband and wife, during the taxable years sold groceries, cigarettes, etc., in a retail store, at which they also made retail liquor sales. Under 13 Mich.Stat.Ann. Section 18.985, Section 14, Comp.Laws 1948, § 436.14, such dealers were called specially designated distributors (or "SDD's") and were subject to the control of the Michigan Liquor Control Commission. The prices at which SDD's purchased and sold liquors were controlled by the Michigan Liquor Control Commission, which set the actual selling price. An SDD could not deviate from the price either in the way of increase or decrease. The Commissioner investigated petitioners' income tax returns because the gross profit reflected on their returns on retail liquor sales was much less than that realized by similar retail liquor stores throughout the state which, from 1943 to 1947, realized an average gross profit of 8.15% on purchases and thereafter of 11.11%. For the years 1943–1947 petitioners' books and returns showed a gross profit of not more than 1.15%. The Commissioner determined that petitioners' gross profit on all other merchandise, such as groceries, cigarettes, etc., should have been at least 22%. While in 1948, 1949 and 1950 petitioners showed a gross profit on liquor of 9.2% 7.9% and 11%, respectively, during these particular years they showed a gross profit on all other merchandise of 10.8%, 1.1% and 13.5%, respectively. This was contrasted with the gross profit on all other merchandise sold by them during the years 1943–1947, inclusive, which was from 19.8% to 27.8%. The Commissioner used the figures shown on petitioners' income tax returns for the years 1944 to 1950. He treated these figures as reflecting the petitioners' liquor inventory and assumed that the inventory of other merchandise remained constant through the years. After making adjustments to reflect inventory variations the Commissioner by applying a 10% markup on liquor purchases determined that petitioners had received substantial additional gross income. The amounts of deficiencies found by the Commissioner were decreased by the Tax Court, which found the following deficiencies for the respective years, together with penalties for fraud:

| Year | Income Tax Deficiency | Additions to Tax under Sec. 293(b) (I.R.C. of 1939) |
|------|------|------|
| 1944 | $1,644.72 | $1,229.56 |
| 1945 | 1,543.66 | 771.83 |
| 1946 | 1,787.81 | 893.91 |
| 1947 | 1,163.02 | 581.51 |
| 1948 | 691.92 | 345.96 |
| 1949 | 876.14 | 438.07 |
| 1950 | 876.44 | 438.22 |

The Tax Court stated that it was satisfied that petitioners realized a margin of profit on liquor for the years 1944–1947 substantially in excess of that shown on their books and that the books and the returns prepared from the books did not correctly reflect their income. These findings are amply sustained by the record.

During the taxable years petitioners kept books on which the purchases and sales of liquor were separately recorded and their tax returns were prepared from these books. They had at least two cash registers in the store, one of which was used exclusively for liquor sales. While the registers had totalizers they had no tapes. The books of account were made

up from slips purporting to be written off each day by one of the petitioners or by their daughter from the totals of the cash register. The books, therefore, were merely a computation made up from these slips from the totals of the cash register. As the Tax Court found, since the petitioners were not buying and selling on a free market, the price at which they both purchased and sold liquor being rigidly fixed by the Michigan Liquor Control Commission, the Commissioner was justified in reconstructing petitioners' income by use of the percentage markup.

Petitioners claimed that the percentage figures used did not take into consideration losses due to leakage, breakage, or pilfering, but no substantial evidence as to the amount of these claimed losses was given. In fact, the claim as to breakage, leakage, and pilferage is refuted by petitioners' own income tax return. While an item of $75.00 was claimed for "Breakage, Spoilage, Theft" in their 1943 return under "Losses," no such deductions were claimed in the return from 1944 through 1950.

It was also contended that during the liquor shortage petitioners were compelled to buy from the state certain types of liquor—brandies, liqueurs, etc., which were later sold at a loss. However, it was shown that there were no such "tie-in" sales in Michigan during the taxable years and that purchases of such liquors were voluntary. Nor did petitioners present any evidence that they had on hand any appreciable amount of these liquors for which there were price increases and decreases.

The Tax Court's determination of fact is conclusive, if not clearly erroneous. 26 U.S.C. § 7482(a); Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751. The Tax Court as trier of the facts had the opportunity to judge the credibility of the taxpayer and other witnesses. Cf. United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746; Hoefle v. Commissioner of Internal Revenue, 6 Cir., 114 F.2d 713.

The question whether an understatement of income is due to fraud is a question of fact. While fraud is never presumed but must be established by clear and convincing evidence and there must be an intention to defraud, Kashat v. Commissioner of Internal Revenue, 6 Cir., 229 F.2d 282; Drieborg v. Commissioner of Internal Revenue, 6 Cir., 225 F.2d 216; Section 1112, Internal Revenue Code, we think this burden is clearly sustained by the discrepancies between real net income and reported income for so many years. Consistent, substantial understatement of income for several years, as was true here, is highly persuasive evidence of intent to defraud the government. Rogers v. Commissioner of Internal Revenue, 6 Cir., 111 F.2d 987. See also Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 137, 99 L.Ed. 150, which held that "evidence of a consistent pattern of underreporting large amounts of income" will support "an inference of willfulness." Since the Tax Court rightly held that a part of the deficiency for each of the years was due to fraud with intent to evade tax, the three-year statute of limitations does not apply. In this instance Section 276(a) of the Internal Revenue Code of 1939 governs, which permits the assessment of the deficiencies for the years in question at any time.

Petitioners finally contend that the Commissioner under Section 3631 of the Internal Revenue Code of 1939 was precluded from assessing a fraud penalty against them for the year 1944. This section prohibits unnecessary examinations of a taxpayer's books and provides that only one inspection of books shall be made for each taxable year unless the taxpayer requests otherwise, or unless the Commissioner after investigation notifies the taxpayer in writing that an additional inspection is necessary. Petitioners contend that such an examination was made for the year 1944 in connection with an adjustment in their return. The Tax Court found that the Commissioner's records do not show that any investigation of petitioners' books and rec-

ords for 1943 and 1944 was made in connection with an adjustment in their return for 1944 prior to the investigation and determination of the deficiencies in issue. Petitioners' contention is based entirely upon the oral testimony of petitioner John Kurnick, but the Tax Court was entitled to conclude that petitioner's uncorroborated statement was not supported by the record. Hoefle v. Commissioner, supra, 114 F.2d 714. Moreover, the Tax Court found no deficiency for the year 1943 and petitioners testified that their books for 1944 had been destroyed by rats prior to the investigation which resulted in the determination of the deficiencies in controversy. It is not shown that the Commissioner violated Section 3631. This finding of fact made by the Tax Court is not clearly erroneous and is binding here.

The decision of the Tax Court is affirmed.