Harold N. Hays v. Commissioner.
Hays v. Commissioner
Docket No. 3255-68.
United States Tax Court
T.C. Memo 1971-300; 1971 Tax Ct. Memo LEXIS 30; 30 T.C.M. (CCH) 1275; T.C.M. (RIA) 71300; November 29, 1971, Filed. Al S. Woolbert and Donald R. Phillippe, 23 E. 9th, Anderson, Ind., for the petitioner. Charles S. Stroad, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent *31 determined the following deficiencies in petitioner's income tax and penalties: Sec. 6653(b)
Year
Deficiency
Penalty
1961
$11,549.18
$5,774.59
1962
15,247.76
7,623.88
1963
12,225.78
6,112.89
1964
14,729.56
7,364.78 1276 After certain concessions by each party, the primary issues for determination are whether petitioner failed to report all of the income earned by his business during the years in question and whether any part of the deficiencies are due to fraud with intent to evade tax. A correlative issue is whether the deficiencies of 1961, 1962, and 1963 are barred by section 6501(a) [1] of the Internal Revenue Code of 1954. In addition, petitioner disputes respondent's disallowance of certain claimed deductions for depreciation and of a capital loss carryover. Findings of Fact Some of the facts have been stipulated. The stipulation along with the exhibits attached thereto are incorporated herein by this reference. Petitioner is Harold N. Hays whose legal residence at all relevant times was in Anderson, Ind. Petitioner *32 filed his Federal income tax returns for the calendar years 1961, 1962, 1963, and 1964 with the district director of internal revenue, Indianapolis, Ind. These returns were prepared on the cash method of accounting, except for the use of inventories. On April 11, 1968, the notice of deficiency for each of the years in issue was mailed pursuant to section 6212. Beginning in 1946 and at all relevant times thereafter, petitioner was the owner and operator of a business known as The Spa in Anderson, Ind. The Spa was a restaurant and tavern which sold food, packaged alcoholic beverages, cigarettes, and related goods. The business records and books with respect to the operation of The Spa were maintained by Harry Blowers, who is associated with Kenneth E. Blowers and Associates, an accounting firm in Anderson, Ind. These records were kept on a single entry basis. Neither Harry Blowers nor any other member of the accounting firm had access to the raw data indicating business receipts and expenses. Each month petitioner submitted to his accountant for posting a piece of paper containing the daily receipts and daily paid out slips. The daily paid out slips included invoices and notations *33 on slips of paper indicating the expenses for which no invoice was attached. Notations were made on these materials to indicate whether the expenses were paid by cash or check. The materials submitted were in petitioner's handwriting. The accountants did not use the cancelled checks, check stubs, or statements from petitioner's checking account in the preparation of petitioner's business records or his tax returns. At various times when the petitioner was not in Anderson, Ind., during the years 1961 through 1964, Robert Snoddy managed The Spa. Mr. Snoddy also managed The Spa when the petitioner was in Florida during the following periods: Year
Period
1961
March 13 through May 1
1962
January 15 through April 30
1963
January 7 through April 29
1964
January 13 through May 25 When petitioner was in Florida, Mr. Snoddy mailed the records concerning the daily operation of The Spa to petitioner once a week. A "change fund" of at least $3,000 was maintained on the premises of The Spa at all times. During all the years at issue, petitioner maintained a checking account at the Anderson Banking Company. After retaining $3,000 for the change fund, weekly deposits *34 were made at the bank which were credited to petitioner's checking account. Petitioner expended from gross sales receipts certain amounts for business expenses and other items before making his bank deposits. The Spa occasionally cashed payroll checks by utilizing the cash receipts or change fund. Generally, the payroll checks thus cashed would be taken to the bank and exchanged for cash thereby insuring a continuous fund of cash in the change fund. With very few exceptions, the bank deposits consisted largely of cash, and nearly all of the deposits contained some cash. During each of the years at issue, petitioner took extensive vacations of two or three months each throughout Florida. Petitioner owned various large boats, including one which was 55 feet in length, and various real properties in Florida during each of the years in issue. During all the years at issue petitioner paid cash living expenses of at least $3,600 which arose in part from the operation of his boats and automobiles, and from his vacation and living needs. 1277 During the years 1961, 1962, 1963, and 1964 petitioner did not receive any inheritances, legacies or gifts. During the taxable year 1961 *35 deposits totaling $107,702.66 were credited to petitioner's checking account at the Anderson Banking Company. Of this amount $3,000 consisted of a deposit from a prior year's receipts, 1960, and loan proceeds of $10,000, leaving a net amount of $94,702.66, which amount constitutes business receipts resulting from the operation of The Spa. During the taxable year 1961, petitioner made merchandise purchases in the amount of $141,632.86 and paid other business expenses in the amount of $60,117.57, which amounts were claimed in petitioner's 1961 income tax return. Petitioner also had an additional expense for interest which was not claimed on his return in the amount of $311.29 but which has been allowed by respondent as a deduction. Accordingly, petitioner's total expenses paid by him in 1961 amounted to $202,061.72. Of the total expenditures, as set forth above, $64,746.41 was paid by checks and the interest expense of $311.29 was also paid by check. The remaining business expenditures in the amount of $137,004.02 were paid by cash. This amount is computed as follows: Expenses:
Merchandise Purchases
$141,632.86
Other Expenses (less depreciation)
60,117.57
Interest Expense, not claimed by petitioner but allowed in stat- utory notice 311.29
Total Expenses paid by petitioner
$202,061.72
Less: Expenses paid by checks
(65,057.70)
Remaining expenses paid by cash $137,004.02
*36 During the taxable year 1961, petitioner made two mortgage payments in cash totaling $650 and made cash expenditures for personal living costs in at least the amount of $3,600, for a total amount of $4,250. The total of the net business receipts, plus the business and interest expenses paid by cash, plus the cash expenditures for mortgage payments and personal living expenses, amount to gross business receipts of $235,956.68 to petitioner for the year 1961. This amount is computed as follows: Net Business Bank Deposits
94,702.66
Business and Interest Expenses Paid by Cash
137,004.02
Mortgage Payments and Personal Expenses Paid by Cash 4,250.00
Total Gross Business Receipts $235,956.68
Petitioner reported gross business receipts in the amount of $215,618.34 on his 1961 Federal income tax return when in fact he had gross business receipts in the amount of $235,956.68. During the taxable year 1962, deposits totaling $93,999.53 were credited to petitioner's checking account at the Anderson Banking Company and on July 9, 1962, a deposit in the amount of $4,000 was credited to petitioner's savings account at the Anderson Loan Association. After adjustment *37 for the $4,000 deposit in the savings account, which was not business income to petitioner in 1962, the net amount of such deposits is $93,999.53 which amount constitutes business receipts resulting from the operation of The Spa. During the taxable year 1962, petitioner made merchandise purchases in the amount of $153,788.88 and paid other business expenses in the amount of $58,845.22, which amounts were claimed on petitioner's 1962 income tax return. Petitioner also had an additional expense for interest which was not claimed on his return in the amount of $122.16 but which has been allowed by rsepondent as a deduction. Accordingly, petitioner's total expenses paid by him in 1962 amounted to $212,756.26. Of the total expenditures as set forth above, $58,417.50 was paid by checks and the interest expense of $122.16 was also paid by check. The remaining business expenses in the amount of $154,216.60 were paid by cash. This amount is computed as follows: Expenses:
Merchandise Purchases
$153,788.88
Other Expenses (less depreciation)
58,845.22
Interest Expense, not claimed by petitioner but allowed in statu- tory notice
122.16
Total Expenses paid by petitioner
$212,756.26
Less: Expenses paid by checks 58,539.66
Remaining expenses paid by cash $154,216.60
*38 During the taxable year 1962, petitioner made four mortgage payments in cash totaling $1,300, made cash expenditures in the amount of $374 for business equipment and made cash expenditures for personal living costs in at least the amount of $3,600, for a total amount of $5,274. The total of the net business receipts, plus the business and interest expenses paid by cash, plus the cash expenditures for mortgage payments, equipment purchases and personal living expenses, amount to 1278 gross business receipts of $253,490.13 to petitioner for the year 1962. This amount is computed as follows: Net business bank deposits
$ 93,999.53
Business and Interest Expenses paid by Cash
154,216.60
Mortgage Payments, Equipment Pur- chases and Personal Expenses paid by Cash
5,274.00
Total Gross Business Receipts $253,490.13 Petitioner reported gross business receipts in the amount of $226,155.30 on his 1962 Federal income tax return when in fact he had gross business receipts in the amount of $253,490.13. During the taxable year 1963, deposits totaling $84,300.58 were credited to petitioner's checking account at the Anderson Banking Company and deposits totaling $9,000 *39 were credited to petitioner's savings account at the Anderson Loan Association. After adjustment for the $9,000 deposit in the savings account, which was not business receipts to petitioner in 1963, the net amount of such deposits is $84,300.58 which amount constitutes business receipts resulting from the operation of The Spa. During the taxable year 1963, petitioner made merchandise purchases in the amount of $156,927.03 and paid other business expenses in the amount of $64,703.40 which amounts were claimed on petitioner's 1963 Federal income tax return. Petitioner also had additional expenses for interest which were not claimed on his return in the amount of $111.98 but which have been allowed by respondent as a deduction. Accordingly, petitioner's total expenses paid by him in 1963 amounted to $221,742.41. Of the total expenditures, as set forth above, $53,402.78 were paid by checks and the interest expense of $111.98 was also paid by checks. The remaining business expenses in the amount of $168,227.65 were paid by cash. This amount is computed as follows: Expenses:
Merchandise Purchases
$156,927.03
Other Expenses (less depreciation)
64,703.40
Interest Expense, not claimed by petitioner but allowed in statu- tory notice 111.98
Total Expenses paid by petitioner
$221,742.41
Less: Expenses paid by checks 53,514.76
Remaining expenses paid by cash $168,227.65
*40 During the taxable year 1963, petitioner made four mortgage payments in cash totaling $1,300 and made cash expenditures for personal living costs in at least the amount of $3,600 for a total of $4,900. The total net business receipts, plus business and interest expenses paid by cash, plus the cash expenditures for mortgage payments and personal living expenses, amount to gross business receipts of $257,428.23 to petitioner in the year 1963. This amount is computed as follows: Net business bank deposits
$ 84,300.58
Business and Interest Expenses Paid by Cash
168,227.65
Mortgage Payments and Personal Expenses paid by Cash 4,900.00
Total Gross Business Receipts $257,428.23 Petitioner reported gross business receipts in the amount of $235,758.92 on his 1963 Federal income tax return when in fact he had gross business receipts in the amount of $257,428.23. During the taxable year 1964, deposits totaling $68,692.68 were credited to petitioner's checking account at the Anderson Banking Company. During the taxable year 1964, petitioner borrowed $13,000 which was deposited in his checking account. This amount was a nontaxable income deposit. On May 21, 1964, a *41 deposit totaling $5,000 was credited to petitioner's savings account at the Anderson Loan Association. This deposit represented the proceeds of check No. 25 drawn on petitioner's checking account on May 21, 1964. On October 2, 1964, petitioner withdrew $3,000 from his savings account and deposited the proceeds of the withdrawal in his checking account. These transfers are nontaxable income deposits. On May 4, 1964, petitioner's checking account was credited with a deposit in the amount of $19,710.69, of which $8,910.69 represented the proceeds of the sale of an apartment known as 1308 Bay View that was owned by petitioner. Accordingly, the amount of $10,800 represents a taxable income deposit. After adjustment for the deposit of $13,000 representing loan proceeds, interaccount transfers totaling $8,000 and the deposit of $8,910.69 constituting proceeds from the sale of an apartment, the net amount of the deposits is $43,781.99, which amount 1279 constitutes the deposits of business receipts resulting from the operation of The Spa. During the taxable year 1964, petitioner made merchandise purchases in the amount of $174,736.52 and paid other business expenses in the amount *42 of $69,922.15 which amounts were claimed on petitioner's 1964 income tax return and allowed by respondent. Accordingly, petitioner's total business expenses paid by him in 1964 amount to $244,658.67. Of the total expenditures, $22,870.95 was paid by checks. The remaining business expenses in the amount of $221,787.72 were paid by cash. This amount is computed as follows: Expenses:
Merchandise Purchases
$174,736.52
Other Expenses (less deprecia- tion) 69,922.15
Total Expenses paid by petitioner
$244,658.67
Less: Expenses paid by checks 22,870.95
Remaining expenses paid by cash $221,787.72 2 During the taxable year 1964, petitioner made six mortgage payments in cash totaling $1,950 and made cash living expenditures for personal living costs in at least the amount of $3,600 for a total amount of $5,550. During the year 1964, petitioner purchased assets for personal use and expended cash for these purchases in the amount of $14,208. This amount is computed as follows: Pontoon Boat
$ 1,100
Airo Flow Trailer
5,508
Clayton Sea Skiff 7,600
$14,208
The total of the net business receipts, plus the business expenses paid by cash, *43 plus the cash expenditures and mortgage payments and personal living expenses set forth, plus cash expenditures for personal assets, amount to gross business receipts of $280,327.71 to petitioner for the year 1964. This amount is computed as follows: Net Business Bank Deposits
$ 43,781.99
Business Expenses Paid by Cash
221,787.72
Mortgage Payments and Personal Expenses paid by cash
5,550.00
Assets Purchased for Personal Use 14,208.00
Total Gross Business Receipts
$285,327.71
Petitioner reported gross business receipts in the amount of $256,326.42 on his 1964 Federal income tax return when in fact he had gross receipts in the amount of $285,327.71. On or shortly after June 15, 1964, Mr. Glen D. Owens, respondent's special agent, was assigned to investigate the tax liabilities of petitioner. On June 18, 1964, petitioner rented a safe deposit box, no. 1-611, at the Anderson Banking Company, Anderson, Ind., in the assumed name of Matson J. Manning. The application for the box did, however, indicate that petitioner was renting the box. Later in the same day, petitioner was notified by the Anderson Banking Company that he would have to change the name from *44 Matson J. Manning to Harold N. Hays. The safe deposit box number remained the same. However, the box was re-registered in the name of Harold N. Hays. During the year 1964, petitioner entered the safe deposit box, no. 1-611, on June 18, June 23, August 10, October 2, October 30, December 5, December 7, and December 31. After adjustment for nontaxable income items, the deposits in petitioner's checking account at the Anderson Banking Company for the periods June 18 to December 31, 1961, 1962, 1963, and 1964 (the periods in prior years corresponding to the period in 1964 after petitioner was questioned by the special agent) are as follows: Periods June 18
Number of
Total
to December 31
Deposits
Amount
1961
27
$ 61,630.55
1962
26
60,888.19
1963
26
56,756.23
1964
17
12,404.41
Petitioner sold the "Top Hat Cleaners" in 1959. He had operated the cleaners as a sole proprietorship in Florida prior to that time. Opinion Petitioner owned and operated a restaurant and tavern called The Spa in Anderson, Ind. Although the business records and tax returns of petitioner's business were prepared by an accountant, petitioner maintained control over the *45 data with which the accountant worked. Every month petitioner submitted to the accountant materials which indicated daily receipts and business expenses. Even while he was in Florida on vacation, petitioner would have his manager send him the information regarding the operation of the business which he in turn would pass on to the accountant. The accountant was not provided with cancelled checks, check stubs, or bank statements for use in preparing either petitioner's business records or tax returns. During the years in issue, petitioner had one checking account in which the business receipts of The Spa less amounts which had been used to pay business expenses in cash and which were 1280 needed for operation of the business were deposited. Petitioner used the same checking account for his personal finances and for transactions unrelated to the business of The Spa. Respondent through use of the bank deposits and cash expenditures method determined that the gross receipts from the operation of The Spa were about ten percent greater than the amounts reported on petitioner's returns for 1961, 1962, 1963, and 1964. Accordingly, respondent determined deficiencies in petitioner's tax *46 based upon these omissions of business receipts. In addition, respondent asserted a penalty of 50 percent of the deficiency under section 6653(b) on the ground that all or part of petitioner's omissions of business receipts in each year was due to fraud. Petitioner contests both of these determinations as well as claiming that the assessment of deficiencies for 1961, 1962, and 1963 is barred by section 6501(a) and that respondent erroneously disallowed certain deductions. Bank Deposits and Cash Expenditures Method The bank deposits and cash expenditures method hypothecates gross income by adding together the total of all bank deposits made during a year plus all expenditures made with cash that was not deposited in a bank. The amount thus computed is then reduced to reflect nontaxable receipts, interbank transfers, and other duplications of items. The method is often used to reconstruct gross income when a taxpayer's records are inadequate or nonexistent, but its use is not limited to such cases. It can properly be used where, as here, the taxpayer maintains apparently complete records. Holland v. United States, 348 U.S. 121 (1954); John Harper, 54 T.C. 1121, 1129 (1970). *47 The bank deposits and cash expenditures method presents evidence of omissions from income which the taxpayer can rebut. As with any other determination of a deficiency, petitioner has the burden of disproving the correctness of respondent's determination. Marcello v. Commissioner, 380 F. 2d 494 (C.A. 5, 1967). Petitioner's evidence and testimony in explanation of the discrepancy between his gross income as reported in his returns and his gross income as computed by the bank deposits and cash expenditures method were sketchy and unpersuasive. Petitioner made the following attempts at explanation: (1) that because his business had always been profitable and because he had always lived frugally, he had a store of previously taxed money which had not been placed in the bank; (2) that respondent failed to deduct deposits which consisted of cash previously withdrawn from the bank; (3) that petitioner lent cash to the business in order to cash payroll checks which cash was never repaid; and (4) that petitioner had funds available from sales of property. We can deal quickly with petitioner's claims. First, although it is true that petitioner's business always made money, *48 petitioner did not attempt to reconstruct his income and expenses from prior years in any way that would indicate that he had accumulated a hoard of money. In addition, petitioner's regular use of a bank for personal and business use (including a savings account) negates petitioner's contention that he kept a large amount of money at home. Second, petitioner did not attempt to show any instance where money previously withdrawn from an account had been deposited again for which respondent has not already accounted. He merely theorizes that the same money may have been deposited several times. Third, petitioner has cited no specific instance in which he lent money to The Spa to cash payroll checks for customers and in which the loan was not repaid. To the contrary, the evidence indicates that The Spa always had a cash "bank" of at least $3,000, that it always had a great deal of cash on hand because most of its sales were for cash, and that payroll checks received from customers were usually taken to the bank to be cashed so that the proceeds could be used to replenish the $3,000 cash "bank." It is highly unlikely both that petitioner would have been called upon to lend cash to the business *49 and that, if he would have lent money, he would not have been repaid. Fourth, we have examined all of petitioner's transactions in boats and real estate and conclude that respondent has correctly accounted for all sales whose proceeds were nontaxable. Accordingly, we hold that petitioner failed to report the following amounts of income: Business
Actual
Receipts
Business
Year
Reported
Receipts
Omission
1961
$215,618.34
$235,956.68
$20,338.34
1962
226,155.30
253,490.13
27,334.83
1963
21,669.31
1964
256,326.42 285,32 21,669.31
1964
256,326.42
280,327.71
29,001.29
Understatements of Income and Fraud Petitioner has correctly pointed out that respondent has the burden of proving that 1281 any omissions from income were due to fraud by clear and convincing evidence. Section 7454, IRC; Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941). Mere failure to disprove the Commissioner's determination of deficiencies is not proof of fraud. Oscar G. Joseph, 32 B.T.A. 1192 (1935); Shaw v. Commissioner, 252 F. 2d 681 (C.A. 6, 1958). Indeed, in many cases where the Commissioner's *50 determination of a deficiency has been sustained his claim of fraud has not been upheld. However, we do not believe this case to be one of such cases. Our findings of fact in the present case clearly indicate that petitioner had substantial amounts of business receipts which were not reported on his returns. None of the explanations offered by petitioner adequately account for omissions which ranged from $20,000 to $29,000 per year. Without cavil, "consistent failure to report substantial amounts of income over a number of years, standing alone, is effective evidence of fraudulent intent." Schwarzkopf v. Commissioner, 246 F. 2d 731, 734 (C.A. 3, 1957); Kurnick v. Commissioner, 232 F. 2d 678 (C.A. 6, 1956); Anderson v. Commissioner, (C.A. 5, 1957); John Harper, supra at 1139. At trial and on brief petitioner made no attempt to present a nonfraudulent reason for his failure to report substantial amounts of income. He tried solely to demonstrate that the omissions of income did not exist; however, his evidence and argument in this respect are germane to the issue of fraudulent intent. Although petitioner does not directly aim his argument at *51 the issue, his apparent contention is that respondent has not demonstrated that petitioner had a likely source of unreported taxable income in each of the years in question. In order to establish fraud by the bank deposits and cash expenditures method, respondent must prove that petitioner had a "likely source" from which the unreported income could have come. Holland v. United States, supra. A mere showing that the taxpayer made bank deposits in excess of his reported income without showing some source from which the taxpayer could have earned taxable income is insufficient evidence of fraud. Denny York, 24 T.C. 742 (1955). Petitioner argues that the profits of The Spa as determined from his tax returns were quite large and that his rate of profit was so far above the national average for taverns and restaurants that it was impossible for The Spa to have earned more money than he reported. We believe the record indicates otherwise. Petitioner bases his argument on statistics compiled by the Internal Revenue Service which show the average corporate rate of profit for taverns and restaurants; however, the figures are hardly specific enough to shed any light *52 on the profit potential of petitioner's business. They in no way show that it was unlikely that petitioner earned greater profits than he reported. The record indicates that The Spa was very successful and could well have earned the additional amounts of income (which represented about ten percent of gross receipts) that petitioner omitted from his tax returns. In fact, the evidence that petitioner offered to show that his past profits from The Spa enabled him to accumulate a hoard of money convinces us that The Spa was capable of earning larger profits than he reported during the years in issue. We note that petitioner always reported his business receipts and expenses personally to his accountant and that he did not provide his accountant with any records of his bank account. Consequently, he was always in a position to cause his business receipts to be understated on his records and tax returns. In most circumstances the renting of a safe deposit box even under an assumed name would be of no significance. While we do not attach great importance to petitioner's renting of a box under an assumed name soon after being questioned by a special agent, we do note that here such action *53 is more consistent with a belief in petitioner's fraudulent intent than with his innocence. In addition, the amount and number of deposits that petitioner made in his checking account decreased substantially after he learned that respondent was attempting to reconstruct his income by use of the bank deposits and cash expenditures method. This fact along with the renting of the safe deposit box create an inference that petitioner desired to conceal his business income. In view of petitioner's consistent omission of substantial amounts of income from his returns, the likelihood that The Spa could have generated additional income, and other circumstances indicating petitioner's desire to conceal income, we hold that respondent has proven by clear and convincing evidence that petitioner understated his business receipts on his returns for 1961, 1962, 1963, 1282 and 1964 because of fraud with the intent to evade tax. Statute of Limitations Our holding that petitioner understated his business receipts because of fraud for the four years in question makes the threeyear limitation on assessment provided in section 6501(a) inapplicable. Petitioner's fraudulent returns permit the *54 tax to be assessed at any time by virtue of section 6501(c)(1). Deductions On his returns for 1961, 1962, and 1963 petitioner took capital loss carryover deductions of $1,000, $1,000, and $730.80, respectively, attributable to petitioner's sale of the Top Hat Cleaners in 1959. Respondent determined that the loss, if any, realized in 1959 was ordinary and deductible in full in that year. Petitioner presented no evidence concerning the nature of the assets sold but stated that the deductibility of the loss carryover was a legal question. Petitioner's legal theory in support of the deduction is the following: (1) In Williams v. McGowan, 152 F. 2d 570 (C.A. 2, 1945), the Commissioner argued that the sale of an unincorporated business was the sale of a capital asset entity; however, the court held that the character of the gain or loss depended upon the nature of each asset of the business sold; (2) Petitioner is entitled to use the theory advanced by the Commissioner in Williams v. McGowan because the issue has become confused. To the contrary the issue is not confused. We can allow capital loss carryover deductions only upon an initial showing that petitioner sold *55 a capital asset in a prior year at a loss. Petitioner has not supplied us with evidence concerning the sale of the cleaners. Accordingly, we must sustain respondent's determination that the loss was ordinary and deductible in 1959. Petitioner claimed the amount of $3,525.78 as a deduction for depreciation on his income tax return for 1962. Respondent disallowed $1,112.36 of this amount in his notice of deficiency. Petitioner contested this disallowance in his petition to this Court but presented no evidence upon which we could find that respondent's determination was incorrect. Accordingly, we hold that petitioner is not entitled to any greater deduction for depreciation than has been allowed by respondent. In view of our adjustment to respondent's determination of omitted business receipts and of concessions made by the parties, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩