Jack A. Nuckols v. Commissioner.
Nuckols v. Commissioner
Docket No. 569-70.
United States Tax Court
T.C. Memo 1972-153; 1972 Tax Ct. Memo LEXIS 104; 31 T.C.M. (CCH) 761; T.C.M. (RIA) 72153; July 18, 1972
Clarence E. Barnes, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following Federal income tax deficiencies *105 and additions to tax against the petitioner: Additions to Tax
Sec. 6653(b),
Year
Deficiency
I.R.C. 1954
1959
$ 4,417.95
$ 2,208.98
1960
6,168.93
3,084.47
1961
13,564.84
6,782.42
1962
32,025.21
16,012.60
1963
25,466.07
12,733.03
This case was called for trial on April 3, 1972, at Charleston, West Virginia, pursuant to notice served on the parties on January 6, 1972. Petitioner did not appear at the trial and there was no appearance on his behalf since counsel had previously withdrawn. The issues for decision are: (1) Whether the petitioner had unreported taxable income for each of the years 1959 through 1963 in the amounts respondent determined by the net worth and nondeductible expenditures method; (2) whether any part of the underpayment of tax for each of the taxable years 1959 through 1963 was due to fraud with intent to evade tax; and (3) whether assessment of any deficiencies determined for the years 1959 through 1963 is barred by the statute of limitations. Findings of Fact Jack A. Nuckols (herein called petitioner) was a legal resident of Shadyside, Maryland, when he filed his petition in this proceeding. For the taxable *106 years 1959 through 1963, petitioner and his former wife, Mary S. Nuckols, filed joint Federal income tax returns with the district director of internal revenue at Parkersburg, West Virginia. Mary S. Nuckols did not petition this Court for a redetermination of the deficiencies and additions to tax included in the statutory notice of deficiencies mailed to the petitioner and Mary S. Nuckols on October 28, 1969. However, she has since been relieved of the liability for the deficiencies and additions to tax under the provisions of section 6013(e), Internal Revenue Code of 1954, the so-called "innocent spouse" statute. During the years in issue the petitioner was president and controlling stockholder of the Raleigh Insurance Agency, Inc. (Raleigh, Inc.), Beckley, West Virginia. He also held similar positions in the Jack A. Nuckols and Company, Inc., and the West Virginia Hearing Aid Center, Inc. (formerly Dahlberg Hearing Center, Inc.), both of Charleston, West Virginia. During the years 1959 and 1960 the petitioner was a State Senator for the State of West Virginia. On March 24, 1961, he was appointed Commissioner of Motor Vehicles, Department of Motor Vehicles, *107 for the State of West Virginia, a position he held until June 30, 1965. In addition to serving as Commissioner of Motor Vehicles for the State of West Virginia during the years 1961 to 1965, petitioner was also engaged in the income-producing activities of Raleigh, Inc., the Jack A. Nuckols and Company, Inc., and the West Virginia Hearing Aid Center, Inc. Petitioner married Jacqueline Dillow in 1966. During the years 1961 to 1965, when petitioner was Commissioner of Motor Vehicles, Jacqueline Dillow was employed by the State of West Virginia as his private secretary. In that capacity she had authority over other secretaries in the Department. During the years in issue the petitioner received substantial unreported taxable income from the Raleigh, Inc., in the form of payments for his personal expenses. These included payments for personal travel by petitioner, his family, his secretary and her son, as follows: Year
Amount
1959
$3,660.90
1960
3,981.73
1961
4,715.72
1962
7,493.77
1963
5,531.41
On several occasions personal travel performed by Jacqueline Dillow or her son 763 was partly paid by Raleigh, Inc. That company, together with the State *108 of West Virginia, also paid for the transportation of petitioner's horses, furniture, golf equipment and his daughter's luggage. Other expenses paid by Raleigh, Inc., included payments for personal expenses connected with rent, utilities, dues and subscriptions and general expenses. None of these were reported as income by petitioner. For the years 1961 through 1963 the records of Raleigh, Inc., Jack A. Nuckols and Company, Inc., and the West Virginia Hearing Aid Center, Inc., furnished by petitioner frequently reflect payments of travel expenses to petitioner for travel performed for and paid by the State of West Virginia. During the years in issue the records furnished by petitioner for each of these corporations reflect reimbursements to petitioner for personal expenditures, totally unrelated to the business of the corporations. These included personal utility and telephone bills and expenses at resort areas. In some instances the petitioner claimed and received payment from both a corporation and the State of West Virginia for the same travel expense. As Commissioner of Motor Vehicles for the State of West Virginia petitioner had sole authority to hire and fire employees *109 for the Department. The practice utilized was for his office to inform the Department accounting office of the names of individuals employed, the dates and salaries they would be paid and their job positions. Fred Vines was listed on the Department's payroll as an investigator during petitioner's tenure in office. Vines was never seen working for the State of West Virginia by the director of the Department's accounting office. During the period involved, Fred Vines was the caretaker for Flat Top Lake located near Beckley, West Virginia, a place where petitioner owned a beach home. Fred Vines performed personal services for the petitioner. In 1964, Jay Rowe, the father of petitioner's secretary, Jacqueline Dillow, was listed on the payroll of the Department of Motor Vehicles for the State of West Virginia. Rowe did not work or travel for the State of West Virginia, nor did he receive any salary or expense checks therefor. At the personal direction of petitioner, salary and expense checks, totaling $4,618.73, were issued by the State of West Virginia to Jay Rowe and were delivered personally to either petitioner or to Jacqueline Dillow. As director of the Accounting Division, Department *110 of Motor Vehicles, State of West Virginia, Robert Morrison personally approved the vouchers submitted by State employees for reimbursement of travel expenses. Normal office procedures were not followed with respect to his approval of travel for Fred Vines, Jay Rowe and the petitioner. Their travel was not verified. Pursuant to petitioner's instructions, all travel checks issued by the State of West Virginia to Fred Vines and Jay Rowe were personally delivered by Morrison to either petitioner or to Jacqueline Dillow. In many instances Robert Morrison personally prepared State of West Virginia travel vouchers for petitioner. Petitioner submitted claims to the State of West Virginia for expenses for practically every working day of every month each year he was Commissioner of Motor Vehicles. On many occasions petitioner claimed travel expenses from the State of West Virginia for periods when he never left his principal office. On other occasions he submitted vouchers for travel to different places, both in and out of the State, for the same day. On one occasion he submitted travel vouchers claiming expenses for travel to the State of Colorado, Wheeling, West Virginia and Beckley, all *111 on the same day. As instructed by petitioner, Morrison personally delivered all petitioner's travel checks to petitioner. During the relative period herein, persons by the names of Leroy Sorrells, Herman Mallary, rudolph Simon, Tilford Bradley and Pinky Johnson were employees of the Department of Motor Vehicles, State of West Virginia, working directly for petitioner. Their job descritions reflected duties as messengers, janitors and custodians. Leroy Sorrells performed many services for petitioner of a personal nature while being paid as a State of West Virginia employee. He drove petitioner and his family and his private secretary and her son to local and distant places in and out of the State of West Virginia. He also transported furniture, horses and other personal items belonging to petitioner to distant locations. He frequently chauffeured petitioner's private secretary and her son to her son's military school. Expenses for such trips were paid for either by the Raleigh, Inc., or the State of West Virginia. On virtually any personal family occasion, Sorrells would transport petitioner's family in State-owned vehicles, paying for the gasoline by use of a State of West Virginia *112 or Raleigh, Inc., credit card. 764 During the period petitioner was Commissioner of Motor Vehicles, Leroy Sorrells and other State of West Virginia employees performed personal housekeeping, yard work and other chores for petitioner at his two apartments in Charleston, West Virginia, his lake cabin at Flat Top Lake near Beckley, West Virginia, and his residence at Beckley. One State employee, Pinky Johnson, was a maid for petitioner at his Charleston apartments. None of the income received by petitioner during the years in issue attributable to his personal expenditures paid for by Raleigh, Inc., or his other corporations, or by the State of West Virginia was reported by petitioner on his Federal income tax returns as income. Likewise, none of the income derived from the State of West Virginia by submission of false travel vouchers, receiving salaries for fictitious employees, or from personal use of State automobiles and State employees was reported on petitioner's Federal income tax returns for such years. Petitioner maintained a high standard of living during these years. He had two luxuriously furnished apartments in Charleston, a lakeside place and a residence. He also *113 dressed well, his children were in college, he flew in private airplanes, owned horses and automobiles and was the controlling stockholder of three corporations. Petitioner furnished some records of his income-producing activities to respondent's agents, but they were inadequate for determining his correct taxable income. His failure to furnish adequate books and records from which his income could be accurately determined caused respondent to utilize the net worth and nondeductible expenditures method for determining his taxable income. Petitioner's net worth and personal living expenses increased each year as follows: Year
Amount
1959
$37,732.68
1960
41,217.53
1961
65,317.15
1962
86,298.53
1963
82,572.36
Through the net worth and nondeductible expenditures method, respondent determined that petitioner's correct taxable income and understatement thereof for the taxable years 1959 to 1963, inclusive are as follows: Taxable In-
Taxable In-
come Per
come As
Under-
Year
Return
Corrected
statement
1959
$17,260.38
$28,524.42
$11,264.04
1960
17,909.68
32,676.43
14,766.75
1961
26,641.24
52,506.91
25,865.67
1962
22,814.91
78,398.37
55,583.46
1963
30,186.27
73,374.78
43,188.51
*114 As a result of the foregoing, petitioner's tax liabilities and understatement thereof for the taxable years 1959 through 1963 are as follows:
Tax Liability
Correct In-
Understate-
Reported on
come Tax
ment of Tax
Year
Return
Liability
Liability
1959
$4,348.53
$ 8,766.48
$ 4,417.95
1960
4,511.01
10,679.94
6,168.93
1961
7,872.79
21,437.63
13,564.84
1962
6,291.39
38,316.60
32,025.21
1963
9,489.26
34,955.33
25,466.07
In September 1965 petitioner was indicted by the State of West Virginia for the felony of falsifying State accounts and defrauding the State of West Virginia while serving in his capacity as Commissioner of the Department of Motor Vehicles. The charges, in part, were as follows: did unlawfully and feloniously make and cause to be made false entries in written accounts kept by the State of West Virginia by preparing and submitting, and causing to be prepared and submitted false personnel cards, false payroll sheets, false expense accounts and false transmittal sheets in writing to the Auditor of the State of West Virginia, which said false personnel cards, false payroll sheets, false expense accounts and false transmittal *115 sheets were kept by the said State of West Virginia with intent in so doing to defraud the State of West Virginia and to assist said JACK NUCKOLS, and other persons to obtain money to which they were not entitled and to conceal the true state of said accounts, * * * against the peace and dignity of the State. On April 12, 1966, at Intermediate Court, Kanawha County, West Virginia, petitioner was convicted by a jury of the charges set forth in the indictment. He was sentenced to confinement in the State Penitentiary for an indeterminate term of not less than one year or more than ten years. On December 17, 1968, the judgment was affirmed by the Supreme Court of Appeals of West Virginia. Ultimate Findings 1. Petitioner had inadequate and incomplete books and records of his income-producing activities for the years 1959 through 1963. 2. Petitioner failed to show any error in the determination made by respondent of petitioner's taxable income for each of the 765 years 1959 through 1963 by use of the net worth and nondeductible expenditures method. 3. Petitioner understated his taxable income in each of the years 1959 through 1963 as follows: Year
Amount
1959
$11,264.04
1960
14,766.75
1961
25,865.67
1962
55,583.46
1963
43,188.51
*116 4. For each of the years 1959 through 1963 a part of the underpayment of tax by the petitioner was due to fraud with intent to evade tax, and each of his Federal income tax returns for those years was a false and fraudulent return with intent to evade tax. Opintion Issue 1 - Determinations of Taxable Income In the absence of adequate books and records, respondent was justified in determining petitioner's tax liabilities for the years 1959 through 1963 by the net worth plus nondeductible expenditures method. See section 446 of the Code; Holland v. United States, 348 U.S. 121 (1954); Cefalu v. Commissioner 60-1, 276 F. 2d 122 (C.A. 5, 1960); and Morris Lipsitz, 21 T.C. 917 (1954), affd. 220 F. 2d 871 (C.A. 4, 1955). The petitioner has the burden of overcoming the presumption of correctness which attaches to the deficiencies determined by the respondent. Welch v. Helvering, 290 U.S. 111 (1933); Thomas B. Jones, 29 T.C. 601 (1957). There is no evidence in this record to rebut or otherwise overcome respondent's determinations of petitioner's taxable income for the years in issue. Therefore, we sustain *117 the deficiency determinations. Issue 2 - Additions to Tax under Section 6653(b) Respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a) of the Code; W. A. Shaw, 27 T.C. 561 (1956). It is clear, and we have found on the evidence presented, that the petitioner understated his taxable income by $150,668.43 over a five year period. Consistent failure to report substantial amounts of income over a number of years is, standing alone, highly persuasive evidence of fraudulent intent. Schwarzkopf v. Commissioner, 246 F. 2d 731 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; Kurnick v. Commissioner, 232 F. 2d 678 (C.A. 6, 1956), affirming a Memorandum Opinion of this Court; and Bollella v. Commissioner, 374 F. 2d 96 (C.A. 6, 1967), affirming a Memorandum Opinion of this Court. But here there are also other "badges of fraud." Petitioner's books and records were inadequate. It is apparent that his specific purpose in failing to keep proper records was to evade tax. In addition, most of petitioner's unreported income was unlawfully derived from fraudulent schemes and practices perpetrated *118 on the State of West Virginia and on his controlled corporations. Among other things, he caused his corporations to pay many of his personal expenses and frequently caused the State to provide him with free services of State employees and to pay him for false travel claims. He also derived unlawful income by collecting salaries and expense checks of fictitious employees which he had personally placed on the State payroll. In this way he derived substantial amounts of unlawful income, none of which was ever reported on his Federal income tax returns. His fraudulent practice of obtaining unlawful funds from the State of West Virginia eventually resulted in his trial and conviction by the State of West Virginia on felony charges of defrauding the State. It is settled law that unlawful gains are includable in the recipient's income. James v. United States, 366 U.S. 213 (1961); Rutkin v. United States, 343 U.S. 130 (1952). Also significant is the fact that the petitioner had personal living expenses far in excess of the taxable income reported on his Federal tax returns. The following comparison between the two figures is quite revealing: Taxable In-
Personal Liv-
come Reported
Year
ing Expenses
on Return
1959
$36,401.30
$17,260.38
1960
34,238.96
17,909.68
1961
48,116.16
26,641.24
1962
54,455.23
22,814.91
1963
51,777.62
30,186.27
*119 Accordingly, we conclude on this record that all of these acts by petitioner were part and parcel of a conscious and deliberate attempt to evade the payment of actual tax liabilities for each of the years 766 1959 through 1963. In our judgment the respondent has met his burden of proving fraud by clear and convincing evidence. The additions to tax under section 6653(b) are upheld. Issue 3 - Statute of Limitations Having determined that a part of the underpayment of tax in each of the years 1959 through 1963 was due to fraud with intent to evade tax, it follows that the assessment of deficiencies for such years is not barred by the statute of limitations. See section 6501(c)(1) of the Code. Decision will be entered for the respondent.