RICHARD LUNA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Luna v. Commissioner
Docket No. 1230-73.
United States Tax Court
T.C. Memo 1975-190; 1975 Tax Ct. Memo LEXIS 183; 34 T.C.M. (CCH) 822; T.C.M. (RIA) 750190; June 17, 1975, Filed Philip C. Cezeaux, for the petitioner. Johnny B. Mostiler, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in, and additions to, petitioner's income tax as follows: Addition to Tax Year
Deficiency
Sec. 6653(b) [1]
1963
$5,167.78
$2,583.89
1964
187.09
93.54
1965
3,384.63
1,692.32 The parties stipulated that petitioner's 1963, 1964 and 1965 Federal income tax returns understated his tax liabilities in the amounts specified above. Accordingly, the only issue is whether any part of the underpayment for each year was due to fraud within the meaning of section 6653(b). *184 FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Petitioner resided in Houston, Texas, when his petition was filed. He and Bertha Luna, his former wife, filed joint Federal income tax returns for 1963, 1964 and 1965 with the district director of internal revenue, Austin, Texas. From 1959 to 1963, petitioner attended classes at Texas Western College, now the University of Texas at El Paso, including two courses in accounting and one course in business mathematics. Petitioner never took a formal course in Federal taxation and has never held himself out as knowledgeable in Federal tax matters. Petitioner was a bookkeeper for several employers from 1963 through 1965, but his duties involved no tax responsibilities. Petitioner embezzled $15,634.25 from K. P. Gifford, his employer, during 1963. Bertha Luna learned of this embezzlement around April or May 1964. Petitioner embezzled $500 from Tab Construction Company, Inc. (hereinafter Tab), his employer, during 1964 and $29,516.42 from Tab during 1965. The embezzlements from Tab were discovered around December 1965; the record does not show when Bertha Luna learned of the Tab embezzlements. Petitioner *185 failed to include the embezzled funds in gross income on his 1963, 1964 and 1965 income tax returns. His income was thus understated by $17,051.32, $935.48 and $15,242.76, respectively, for those years. [2] Petitioner accordingly understated his income tax liabilities by $5,167.78, $187.09 and $3,384.63, respectively, for those years. Petitioner thus consistently excluded all embezzled funds in determining his gross income for Federal income tax purposes. On October 31, 1967, Internal Revenue Agent Fred Hiebert and Special Agent James R. Burns interviewed petitioner with respect to his 1963, 1964 and 1965 income tax returns. Special Agent Burns advised petitioner of his rights under the fourth, fifth, and sixth amendments to the Constitution. During this interview, petitioner initially denied having any savings accounts in his own name and denied having received any additional income not reported during those years. When asked about money embezzled from K. P. Gifford, he then admitted the embezzlements *186 and admitted that he did have accounts in his own name. Petitioner stated that he lost most of the embezzled funds gambling. Petitioner also stated that he did not embezzle from Tab until 1965. (Petitioner did embezzle $500 from Tab during 1964, however; he evidently believed that amount had also been embezzled in 1965.) Petitioner also stated during this interview that when he filed his 1963 and 1965 income tax returns he knew the embezzled funds should have been reported and that he should have paid tax thereon. He stated that he did not report the embezzled funds because the money was lost gambling and because he did not want to "flag" his returns. With respect to that "flag" statement, petitioner testified that he meant that he did not want his former wife to know he had embezzled and gambled away the funds as she would have requested him to report those funds had she known about them. Petitioner also testified that he did not recall making an initial statement to the agents that he received no additional income during the years in question, but that if he did make such a statement then he would have to agree that he did knowingly make a false statement to them. Petitioner *187 also testified that he was not aware that embezzled funds were taxable income until the week before the October 31, 1967 interview, when Bertha Luna underlined for him part of a paragraph in a 1962 CCH Master Tax Guide which indicated that such funds were taxable income. [3] He thus maintains that he knew when he was being interviewed in 1967 that he should have reported the embezzled funds, but that he did not know that when he filed the 1963, 1964 and 1965 returns. Petitioner was acquitted by a jury of three counts of income tax evasion for the years in question in 1970. [4]
OPINION Section 6653(b) provides, in part, that if any part of any underpayment of tax required to be shown on a return is due to fraud, *188 then there shall be added to the tax an amount equal to 50 percent of the underpayment. The sole issue herein is whether the underpayment of tax by petitioner during 1963, 1964 and 1965 was due to fraud. The entire burden of proving fraud rests on respondent, Joseph v. Moriarty,18 T.C. 327, 329 (1952), affd. 208 F. 2d 43 (C.A.D.C., 1953), and he must establish fraud by clear and convincing evidence. Luerana Pigman,31 T.C. 356, 370 (1958); W. A. Shaw,27 T.C. 561, 569 (1956), affd. 252 F. 2d 681 (C.A. 6, 1958). Petitioner has admitted to substantial understatements of income for 1963 and 1965, and the admitted understatement of income for 1964 constituted omission of all embezzled funds for that year. "Consistent, substantial understatement of income for several years, as was true here, is highly persuasive evidence of intent to defraud the government." Kurnick v. Commissioner,232 F. 2d 678, 681 (C.A. 6, 1956), affg. a Memorandum Opinion of this Court; accord, Baumgardner v. Commissioner,251 F. 2d 311, 322 (C.A. 9, 1957), affg. a Memorandum Opinion of this Court. See *189 also, Holland v. United States,348 U.S. 121, 139 (1954), which held that "evidence of a consistent pattern of underreporting large amounts of income" would support an inference of willfulness. Especially damaging are petitioner's admissions to Internal Revenue Agent Hiebert and Special Agent Burns that he knew he should have reported the embezzled funds when he filed the returns and that he did not want to "flag" his returns. At trial, petitioner did not deny making such statements, and his explanation for the "flag" statement was that he did not want his former wife to know he had embezzled and gambled away the unreported funds. If petitioner did not report the income because he did not want his former wife to know about it, he must necessarily have known that he should have reported the income to begin with. Petitioner thus failed to repudiate his interview admissions and thus presented an explanation for his admissions which assumes he knew he should have reported the embezzled funds. [5]
*190 Also damaging to petitioner was his attempt to mislead the agents by initially denying that he had any bank accounts in his own name or that he had failed to report any income during the years in question. This attempt to hide the unreported embezzlements by lying even after he admittedly had knowledge that they should have been reported is, in our opinion, highly damaging to his credibility. Petitioner's acquittal of criminal charges of evasion of tax under section 7201 [6] does not help his cause, as "a jury verdict acquitting a taxpayer in a criminal case has no binding effect in a civil fraud proceeding. Different standards of proof are involved. Helvering v. Mitchell, 303 U.S. 391 * * *." Lydon v. Commissioner,351 F. 2d 539, 545 (C.A. 7, 1965), affg. a Memorandum Opinion of this Court. *191 On the basis of all the evidence presented, we hold that petitioner is liable for the 50 percent fraud penalty imposed by section 6653(b) for 1963, 1964 and 1965, as determined by respondent. Decision will be entered for the respondent.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Differences between these amounts of understated income and amounts embezzled by petitioner are attributable to other adjustments made by respondent that are not here in issue.↩
3. That paragraph described the change in position by the Supreme Court concerning taxability of embezzled funds from Commissioner v. Wilcox,327 U.S. 404 (1946) (not taxable) to James v. United States,366 U.S. 213↩ (1961) (taxable).
4. In United States v. Luna,313 F. Supp. 1294↩ (W.D. Tex., 1970), petitioner's Motion to Suppress the agents' memorandum describing the interview of October 31, 1967 was denied.
5. Since Bertha Luna did not become aware of the 1963 embezzlement until April or May of 1964, and since the record does not show when she became aware of the 1964 and 1965 embezzlements, petitioner's testimony that his former wife did not know of the 1963, 1964 and 1965 embezzlements at the times their income tax returns for those years were being filed is uncontradicted by the record.↩
6. SEC. 7201. ATTEMPT TO EVADE OR DEFEAT TAX. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.↩