*Decision will be entered under Rule 50.*

EMANUEL HOLLMAN, INCOMPETENT, MARVIN LECHTMAN, SPECIAL GUARDIAN AD LITEM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89647. Filed May 11, 1962.

*Bernard J. Long, Esq.*, and *Richard P. Milloy, Esq.*, for the petitioner.

*John J. Madden, Esq.*, and *Robert A. Trevisani, Esq.*, for the respondent.

256

OPINION.

RAUM, *Judge:* 1. *Fraud.*—The Commissioner has determined that petitioner's returns for the years 1951 through 1955 were false and fraudulent with intent to evade tax, and that part of the deficiency determined for each of these years was due to fraud with intent to evade tax. Not only is proof of fraud required to overcome the bar of the statute of limitations for 1951 and 1952, but it is also necessary in order to support the Commissioner's 50 percent addition to tax for fraud for all the years involved. And, of course, the Commissioner has the burden of establishing fraud by clear and convincing evidence.

. . The stipulated facts disclose that petitioner omitted substantial amounts of capital gains income in his returns for the years 1951, 1952, 1954, and 1955, of interest income in his returns for the years 1951 through 1954, and of dividend income in his returns for the years 1951 through 1955. Respondent urges that proof of these understatements of income is in and of itself sufficient to satisfy his burden of proving fraud. However, while it is true that consistently large understatements of income may well be strong evidence of fraud (cf. *Holland* v. *United States*, 348 U.S. 121; *Schwarzkopf* v. *Commissioner*, 246 F. 2d 731, 734 (C.A. 3), affirming a Memorandum Opinion of this Court; *Kurnick* v. *Commissioner*, 232 F. 2d 678, 681 (C.A. 6), affirming a Memorandum Opinion of this Court), there are other aspects of the record in the present case that prevent us from concluding that fraud has been established here.

Considerable psychiatric evidence was presented to us casting serious doubt upon the charge of fraud. The court in the criminal case even found that petitioner was so incompetent that he could not stand trial; and this Court, on the Government's motion, continued the trial herein, so that a guardian ad litem could be appointed. Moreover, one of the psychiatrists upon whom the District Court relied, and who also appeared before us, was an independent expert, appointed by the District Court.

The evidence before us indicated that petitioner was suffering from a severe psychosis, which is to be sharply distinguished from what is

sometimes characterized as a neurosis or milder emotional disturbance. To be sure, we heard evidence that petitioner was engaged in intricate financial operations during the tax years that seem inconsistent with the present contention that his mental condition was such as to rule out fraud. Also, petitioner's own testimony before the Court displayed an astuteness and awareness of matters that make it difficult to say that his mental condition was responsible for the understatements of income. Yet, it must be remembered that fraud must be proved by clear and convincing evidence, and while we are not fully satisfied that the false returns were a product of mental disease, the psychiatric testimony leaves us with such troubling doubts that we cannot find that fraud has been proved in this case. Accordingly, in view of the burden of proof, we have made a finding as to the absence of fraud.[2]

2. *Statute of limitations for 1953, 1954, and 1955.*—(a) As to 1953, the parties are in agreement that consents were signed by petitioner on February 15, 1957, March 3, 1958, and April 3, 1959, which extended the time for assessment of any income taxes due from petitioner for the years 1953 to June 30, 1960, and that prior to that date respondent made a jeopardy assessment and mailed a notice of deficiency for 1953 to petitioner. However, petitioner contends that the consents signed in 1957, 1958, and 1959, although regular upon their face, are invalid because of his mental incompetency during the years in which the consents were executed. He concedes that he has the burden of proving their invalidity.

We have discussed above the state of the record in relation to petitioner's competency. And although we have concluded, in the light of the Government's burden of proof in respect of fraud, that fraud had not been established, the question as to the validity of the waivers presents an entirely different matter. It is quite possible that both parties may fail in carrying their respective burdens of proof. Cf. *Drieborg* v. *Commissioner*, 225 F. 2d 216, 218 (C.A. 6), affirming in part and reversing in part a Memorandum Opinion of this Court; *Olinger* v. *Commissioner*, 234 F. 2d 823, 824 (C.A. 5), affirming in part and reversing in part a Memorandum Opinion of this Court; *L. Schepp Co.*, 25 B.T.A. 419, 437. We think that such is the situation here. Moreover, the reasonable reliance by the Government upon these waivers, which were in all respects regular in form, should preclude any successful attack upon their validity, whether the situation be one calling for the application of estoppel or some cognate doctrine. Cf. *Stearns Co.* v. *United States*, 291 U.S. 54, 61.

(b) As to the years 1954 and 1955, section 6501(e)(1) of the 1954

---

[2] This finding has the effect of eliminating petitioner's liability for additions to tax for fraud determined for the years 1951 through 1955 and for any deficiencies in tax for the years 1951 and 1952. For this reason the remaining issues involve only petitioner's liability for the years 1953, 1954, and 1955. Thus, issue No. 6, relating to 1951 and 1952 dividends with respect to securities in "special subscription accounts" becomes moot.

Code provides that if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. On June 23, 1960, within 6 years after petitioner filed his returns for the years 1954 and 1955, respondent made a jeopardy assessment of the deficiencies for those years, and on July 27, 1960, a notice of deficiencies for the years 1954 and 1955 was mailed to petitioner. The evidence discloses that petitioner omitted from his gross income for each of those years an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in his return for each year. In the circumstances, the jeopardy assessment made for the years 1954 and 1955 was not barred by limitations.

3. *Deposits from unidentified sources.*—Respondent included in petitioner's income for 1953 three deposits made in his brokerage account with Eisele & King Libaire, Stout & Co. in the amounts of $1,261, $7,614, and $1,000, totaling $9,875, on the ground that these deposits represented unreported income from unidentified sources.

The evidence establishes that the $1,261 and $1,000 items represent merely transfers of funds from a bank account of petitioner, and accordingly do not constitute unreported income. However, the $7,614 item remains unexplained on this record. In the circumstances, we have no alternative other than to hold that petitioner has not carried his burden of proof in relation thereto. Cf. *William O'Dwyer*, 28 T.C. 698, 705, affirmed 266 F. 2d 575 (C.A. 4), certiorari denied 361 U.S. 862.

4. *Deductions.*—Petitioner contends that he is entitled to business deductions and "Itemized Deductions" for each of the years 1951 through 1955 of amounts in excess of those allowed by respondent. Inasmuch as we have decided that the deficiencies for the years 1951 and 1952 are barred by limitations, the deductions for those years need not be considered. In our findings we have stated the deductions claimed by petitioner in his returns for the years 1953, 1954, and 1955 and the amounts allowed by the respondent. Evidence presented by petitioner to establish that he is entitled to larger deductions than respondent allowed consists only of his unsupported and indefinite testimony as to business expenses, medical expenses, and charitable contributions. A careful consideration of his testimony does not convince us that he is entitled to deductions for the years 1953, 1954, and 1955 in excess of those allowed by the respondent.

5. *Exemption for blindness.*—Petitioner contends that he is entitled to an exemption for each of the taxable years 1953, 1954, and 1955 under section 25 (b) (1) (C) of the 1939 Code and section 151 (d) (1) of the 1954 Code. These sections provide an exemption (in the

amount of $600) for a taxpayer who is blind at the close of the taxable year in addition to the usual personal exemption of $600. Section 151(d)(3) of the 1954 Code defines blindness:

For purposes of this subsection, an individual is blind only if his central visual acuity does not exceed 20/200 in the better eye with correcting lenses, or if his visual acuity is greater than 20/200 but is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees.

Section 25(b)(1)(C)(iii) contains substantially the same definition.

We think that petitioner has established his right to this exemption. A qualified ophthalmologist, who had examined petitioner, appeared as a witness. The statutory definition was read to him, and he testified clearly that petitioner's eye condition met the requirements of the statute. The statute was obviously drafted in medical or technical terms, and while we are not bound by the conclusion of the witness, it is entitled to considerable weight. Moreover, if we were to reject his conclusion it would have to be on the ground that petitioner's vision could be corrected beyond the minimum statutory requirements by a special type of contact lens. However, the record shows that such lenses could be worn by petitioner only with severe pain and only for brief periods, and that they produced infection and ulcers. We think that when Congress used the term "correcting lenses" it referred to lenses that may be ordinarily and normally worn by the taxpayer, not to lenses of the character involved herein. We hold that petitioner is entitled to the exemption.

6. *Casualty loss.*—The parties have stipulated that in the latter part of 1954, petitioner was involved in an automobile accident; that the cost of his car was $2,412; that for 1954 and previous years he claimed depreciation in connection with the operation of the car in the amount of $1,448; that he incurred towing costs of $35 as a result of the accident; and that the fair market value of the car after the accident was $100. Petitioner contends that he sustained a deductible casualty loss of $864, representing the difference between $964 ($2,412 less $1,448 depreciation claimed) and $100, the fair market value of the car after the accident.

Section 165 of the 1954 Code provides that an individual is entitled to deduct casualty losses sustained during the taxable year "not compensated by insurance or otherwise." Even if it be assumed that the loss sustained by petitioner in 1954 as the result of the automobile accident amounted to $864, he is not entitled to the deduction on this record because he has not sustained his burden of proving that the claimed loss was not compensated by insurance or otherwise.

7. *Additions to tax.*—The remaining issue involves petitioner's liability for certain additions to tax. Respondent determined that petitioner was liable for additions to tax for the taxable year 1953

under section 294(d)(1)(A) of the 1939 Code for failure to file a declaration of estimated tax, for the taxable year 1954 under section 294(d)(2) of the 1939 Code for underestimation of estimated tax, and for the taxable year 1955 under section 6654(a) of the 1954 Code for underestimation of estimated tax. Since petitioner has introduced no evidence showing that such additions were in error, respondent's determinations must be sustained. However, the addition to tax for 1955 may be adjusted under Rule 50 to take into account the payment of $1,000 which respondent concedes petitioner made by check dated April 4, 1956, on his declaration of estimated tax for the year 1955.

*Decision will be entered under Rule 50.*