LEW DAVID DAILEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dailey v. Commissioner
Docket No. 31194-81.
United States Tax Court
T.C. Memo 1984-89; 1984 Tax Ct. Memo LEXIS 582; 47 T.C.M. (CCH) 1150; T.C.M. (RIA) 84089; February 27, 1984. Lew David Dailey, pro se. Mark A. Pridgeon, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION
*583 KORNER, Judge: Respondent determined deficiencies in income tax against petitioner, together with additions to the tax, for the calendar years 1975 through 1978 as follows: Additions to tax
Calendar
Deficiency in
under
Year
Income Tax
Section 6653(b)
Section 6654 [1]
1975
$3,398.21
$1,699.11
$2,166.00
1976
1,984.00
992.00
61.78
1977
3,456.00
1,728.00
74.78
1978
4,117.71
2,058.86
126.82
The issues presented for our decision are: (1) Whether respondent erred in treating petitioner's wages during the above years as taxable income; (2) whether petitioner had business deductions and itemized personal deductions in the year 1976 in excess of those allowed by respondent; [2] (3) whether petitioner is liable for additions to the tax for fraud under section 6653(b); and (4) whether petitioner is liable for additions to tax for underestimation under section 6654. *584 FINDING OF FACT Some of the facts and exhibits herein were stipulated, and such facts and stipulated exhibits are incorporated herein by this reference. Petitioner was a resident of Brainerd, Minnesota, at the time he filed his petition in this case. In the year 1970, petitioner became an employee of the Northwestern Bell Telephone Company, and continued to work for that employer at least through the year 1978. For the years 1972, 1973, and 1974, at least, he reported his wages from the telephone company in joint income tax returns filed with his then wife. In the fall of 1974, however, and apparently shortly before he separated from his wife, petitioner announced to her that he did not want to pay any more Federal income taxes. At or about that time, he also told his wife's aunt that he had a system under which he would not have to pay any Federal income tax, and that even if he got caught, he would still be able to retain some of the money. On December 29, 1975, petitioner filed with the telephone company, his employer, a Form W-4E (Exemption from Withholding Certificate), in which petitioner certified under penalties of perjury that he had no income tax liability *585 for 1974, and that he anticipated no such liability for 1975. A similar certificate was filed by petitioner twice for the year 1976, on May 14, 1976. On July 25, 1977, and again on December 12, 1977, petitioner filed with the telephone company Forms W-4 (Employee's Withholding Allowance Certificate), in which petitioner claimed that he was exempt from withholding taxes and also certified that he had incurred no liability for Federal income tax for the proceding year and anticipated no such liability for the current year. A similar Form W-4 was filed by petitioner with the telephone company for the year 1978 on May 11, 1978. During the above years, petitioner received the following amounts in wages from the Northwestern Bell Telephone Company: YEAR
WAGES
1975
$15,453.89
1976
11,014.16
1977
18,336.39
1978
20,325.63
Petitioner filed no Federal income tax returns for the years 1975 through 1978. On or about April 11, 1976, and after petitioner had filed the Form W-4E relating to his taxable year 1975, petitioner attended a political meeting in Chicago, Illinois, sponsored by a group called the Libertarian Party. One of the speakers at that meeting was *586 a John Joseph Matonis, who represented himself to be a tax lawyer. He spoke on various topics, including the taxability of wages as income. After hearing the speech, petitioner arranged to have lunch with Mr. Matonis, and discussed the subject further. At that time, Mr. Matonis persuaded petitioner to purchase from him copies of what purported to be appellate briefs filed by Mr. Matonis with two Federal Courts of Appeal in two unrelated criminal tax cases, wherein, inter alia, some of the better known and thoroughly discredited "tax protester" arguments were advanced. [3]
*587 Petitioner made no effort to check on the qualifications or credentials of Mr. Matonis as a tax attorney, and apparently made no effort to secure any other independent advice from a qualified person as to the validity of Mr. Matonis' expressed position that wages were not gross income for Federal income tax purposes. No professional relationship of lawyer and client was created between Mr. Matonis and petitioner. At the time of the Libertarian Party rally in Chicago, petitioner made a payment of $35 to the party. In the year 1976, petitioner conceived the idea of starting a new business, consisting of the video recording of musical groups or bands which could be used for advertising and promotion purposes. The record is unclear as to how far petitioner went in attempting to organize this business, but it is clear that no books and records, correspondence files, bank ledgers or any other records were maintained, and no income was earned. At least part of petitioner's underpayment of tax for each of the years 1975 through 1978, and his failure to file returns for said years, was due to fraud with the intention of evading tax.
OPINION 1. Wages as Taxable Income - *588 Although the principal issue raised by petitioner in his pleadings was the question of the taxability of his wage income from the telephone company, and although he continued to maintain at trial that such wages were not taxable compensation, the issue is nowhere mentioned in petitioner's brief, and he is therefore deemed to have abandoned it. In any case, it is completely frivolous and without any merit at all. Wages are clearly taxable income under the Internal Revenue Code, section 61(a). Such taxation is clearly constitutional, Eisner v. Macomber,252 U.S. 189 (1920); Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955); Funk v. Commissioner,687 F.2d 264 (8th Cir. 1982), affg. T.C. Memo. 1981-506; Rowlee v. Commissioner,80 T.C. 1111 (1983), on appeal (2nd Cir., Sept. 13, 1983). The constitutional propriety of imposing the imcome tax upon wage income is so far beyond dispute that is deserves no further comment. 2. Additional Business and Personal Itemized Deductions - At trial, petitioner testified that he attempted to organize a new business in the year 1976 for *589 the purpose of making video recordings of musical groups, with such recordings to to be sold for advertising and promotion purposes. In aid of this venture, petitioner testified that he purchased certain equipment, which he described as "… some specialized, portable video equipment… a special low-light, black and white camera for shooting in poor lighting conditions; a portable video unit, and video monitor and some other materials." He also admitted in his testimony, however, that he kept no books and records with respect to this venture, maintained no files or bank accounts, had no list of customers and earned no income. There is also no evidence that he ever recorded any musical group at all. On the basis of this record, we can only conclude that petitioner never even got started in carrying on this business. At most, he may have acquired some equipment with the intention of starting a business, but it is apparent to us that the business in fact never commenced. Under these circumstances, no business expense deductions would be allowable until the trade or business was actually carried on. Richmond Television Corp. v. United States,345 F.2d 901 (4th Cir. 1965), *590 vacated and remanded on other grounds, 382 U.S. 68 (1965); Polachek v. Commissioner,22 T.C. 858 (1954). Even if petitioner had established that his business had really commenced, and even if petitioner had established the cost of the items which he claimed to have purchased, which he did not, such items as described by petitioner were clearly items of a capital nature to be used in carrying on his video taping business. Any expenditures to acquire these items were therefore capital expenditures under section 263, for which no ordinary business deduction under section 162 would be allowable. Petitioner has established that he made a contribution to the Libertarian Party of Illinois in 1976 in the amount of $35. Such amount would appear to be deductible under section 218 as it existed in 1976 (now repealed), but, inasmuch as respondent allowed petitioner the benefit of the standard deduction under section 141 (now repealed) in recomputing petitioner's tax liability for 1976, and since such standard deduction under section 141 is larger than the claimed deduction, petitioner's itemized deduction is deemed to be included therein and no additional amount *591 is therefore allowable. 3. Additions to Tax Under Section 6653(b) - Respondent determined that petitioner's failure to file returns for years 1975 through 1978 was due to fraud within the meaning of section 6653(b), and proposed the 50 percent addition to tax accordingly. Respondent has the burden of proving petitioner's fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). Fraud, as used in section 6653(b), means actual intentional wrongdoing.Mitchell v. Commissioner, 118 R.2d 308 (5th Cir. 1941). The existence of fraud is a question of fact to be determined from the entire record. Grosshandler v. Commissioner,75 T.C. 1 (1980); Stratton v. Commissioner,54 T.C. 255 (1970). Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85 (1970). The Supreme Court has stated that an "* * * affirmative willful attempt may be inferred from * * * any conduct, the likely effect of which would be to mislead or conceal." Spies v. Commissioner,317 U.S. 492, 499 (1943). Although the mere failure to file a return, without more, is not proof *592 of fraud, it may be considered in connection with other facts, Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968) and the failure to file a return can be a fraudulent act just as much as the intentional filing of a false return. Beaver v. Commissioner,supra;Acker v. Commissioner,26 T.C. 107 (1956). Upon consideration of this record as a whole, we hold that respondent has carried his necessary burden of proof to establish fraud in each of the years in question. The record herein shows that petitioner was fully aware of the taxability of his wages and that he was required to file returns for 1975 through 1978. This is established by his proper filing of returns reporting his wages from the telephone company for the years 1972, 1973 and 1974. We have held that the consistent filing of tax protester returns on grounds which the taxpayer knows are invalid and frivolous will support respondent's burden of proof on fraud, Fuhrmann v. Commissioner,T.C. Memo. 1982-255; Rowlee v. Commissioner,supra; and we hold that the deliberate failure to file returns which the taxpayer *593 knew were required, on nothing but frivolous tax protester grounds, is equal evidence of fraud. Furthermore, a pattern of not filing income tax returns, coupled with convincing affirmative indications of a specific intent to defraud, is sufficient to satisfy respondent's burden of proof. Grosshandler v. Commissioner,supra.
Such affirmative indications are present in this case in petitioner's filing of false withholding certificates for each of the years in issue. In each of those withholding certificates, as we have detailed in our findings of fact, petitioner certified that he had no liability for income tax for the preceding year and would have none in the current year. Each of those statements was false, and petitioner knew they were false.The effect of such statements when filed with petitioner's employer was to induce petitioner's employer to stop withholding income tax on petitioner's wages for the current year.We hold that these were affirmative acts of fraud. Stephenson v. Commissioner,79 T.C. 995, 1007 (1982); Furhmann v. Commissioner,supra; Habersham-Bey v. Commissioner,78 T.C. 304, 313 (1982); *594 Scholle v. Commissioner,T.C. Memo. 1982-267; Horne v. Commissioner,T.C. Memo. 1983-362. In order to excuse his conduct in this case, petitioner makes two arguments: (a) Petitioner argues that he filed the withholding certificate for the year 1975 at a time when he thought he was about to be discharged from his employment, and therefore anticipated he would have no taxable income for the year. Petitioner admitted, however, that he was not fired but still did nothing to correct the erroneous withholding certificate which he had already filed with his employer. The argument requires no further comment. (b) Petitioner further argues that his actions in filing false withholding certificates and in failing to file returns for 1974 through 1978 were because he had "advice of counsel" which convinced him that his wages were not taxable income.To support this argument, petitioner points to a political speech which he heard in Chicago in April 1976, followed up by a luncheon conversation which he had with the speaker, and the purchase from him of a couple of documents full of stale and discredited tax protester arguments. Petitioner admitted that *595 he made no attempt to check the credentials and qualifications of this speaker, nor did he make any attempt to seek the advice of any qualified person as to the legitimacy of the now threadbare argument that wages were not taxable income. We simply reject the idea that listening to a political speech, followed by a luncheon table conversation, constitutes "advice of counsel." We believe that petitioner knew full well that his wages were taxable income, as shown by the fact that he properly filed returns and reported such income in the years 1972 through 1974. His reliance on the speech of the alleged "tax lawyer" as being the advice of counsel is nothing more than a frivolous attempt to draw the cloak of respectibility over a course of action which petitioner had already determined to embark upon -- note that the first filing of his false withholding certificate, for the year 1975, was done some months before he ever heard that speech. We do not think that petitioner was concerned about the accuracy of the statements made by the speaker, nor whether the speaker had the necessary qualifications to give opinions on the law which should be believed. We think that petitioner simply *596 sought someone who would say what he wanted to hear, and then seized upon it. 4. Additions to the Tax Under Section 6654.
Petitioner had the burden of proving error in respondent's determination that additions to tax should be imposed under section 6654(a). Hollman v. Commissioner,38 T.C. 251, 263 (1962). Petitioner has failed to introduce any evidence indicating that respondent so erred, and did not even touch on the issue on brief. We conclude that respondent must be sustained on this issue. To reflect all the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect in the years in issue, and all Rule references are to the Tax Court's Rules of Practice and Procedure, except as otherwise noted.↩
2. This issue was not raised by the pleadings of either party. At trial, however, it was apparent that both parties were ready and willing to try the issue, and it was done. See Rule 41(b).↩
3. Such arguments included (a) that a person could validly refuse to file any income tax return at all simply by invoking the protection of the Fifth Amendment; (b) that Federal reserve notes are not legal tender; (c) that taxing compensation for services as gross income without allowing any amount for "cost of services rendered" is unconstitutional; (d) that imposing the imcome tax upon persons who are opposed to it on religious or moral grounds violates the First and Fifth Amendment↩ rights of such persons; (e) that the income tax is an unconstitutional excise tax as applied to individuals; and (f) that the false filing of a withholding certificate was not fraudulent where the individual was not subject to the income tax laws in the first place, etc., etc.