**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**Beverly J. WHITNEY & Richard S. Walsh, Defendants.**

No. 89–0751–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Oct. 3, 1990.

Jeffrey S. Henry, Kuraner and Schwegler, Kansas City, Mo., for plaintiff.

H. Vincent Monslow, Linde, Thomson, Langworthy, Kohn & Van Dyke, P.C., Kansas City, Mo., for Whitney.

Ronald E. Finley, Kansas City, Mo., for Walsh.

## ORDER

WHIPPLE, District Judge.

Before the court is co-defendant/cross claimant Beverly J. Whitney's ("Whitney") Motion for Summary Judgment, filed July 12, 1990. On August 15, 1990, co-defendant/cross claimant Richard S. Walsh ("Walsh") filed a Memorandum in Opposition to the Motion for Summary Judgment. Whitney filed a Reply Memorandum on August 27, 1990. For the reasons set forth below, the motion will be granted.

### I. *Statement of Facts*

This case concerns the question of who is the appropriate beneficiary of a one-half (½) interest in a group life insurance policy issued by plaintiff Prudential Insurance Company of America ("Prudential"), pursu-

ant to Servicemen's Group Life Insurance ("Act"), 38 U.S.C. § 765 et seq.

Prudential issued a policy to one Richard S. Thompson ("Thompson"), who was qualified to receive the policy of life insurance as a member of the Missouri Army National Guard. The terms of the policy provided Thompson with life insurance in the amount of $50,000.00. In the form provided to elect one's beneficiaries, Thompson indicated that he wanted the policy proceeds distributed "by law." In accordance with 38 U.S.C. § 770(a), the insurance proceeds are distributed to the insured's spouse and children. In the event that the insured is not survived by a spouse or children, the proceeds are distributed to the "parents of such member or former member."

On August 1, 1988 Thompson died, survived by neither a spouse or children. In conformity with 38 U.S.C. § 770(a), Prudential paid one-half of the insurance proceeds to Thompson's natural mother, Whitney. Prudential did not distribute the remaining portion of the policy proceeds because it was unable to determine who the appropriate recipient was. Walsh, as Thompson's natural father, claimed that he was entitled to the remaining one-half share of the policy proceeds. Whitney claimed that she was entitled to all the benefits under the policy because Walsh abandoned Thompson during minority.[1] As such, Whitney argued that she is the only surviving "parent" under the Act's definition of parent, 38 U.S.C. § 765(9). The pertinent language provides that a father of an illegitimate child is a "parent" only if

(a) he acknowledged paternity of the child in writing signed by him before the child's death; or (b) he has been judicially ordered to contribute to the child's support; or (c) he has been judicially decreed to be the father of such child; or (d) proof of paternity is established by a certified copy of the public record of birth or church record of baptism showing that the claimant was the informant

---

1. The parties have stipulated to the fact that Thompson is the illegitimate child of Whitney and Walsh.

and was named as father of the child; or (e) proof of paternity is established from service department or other public records, such as school or welfare agencies, which show that with his knowledge the insured was named as the father of the child.

To resolve the matter, Prudential filed this action for interpleader pursuant to 28 U.S.C. § 1335.

## II. *Discussion*

A party is entitled to summary judgment pursuant to Fed.R.Civ.P. 56(c) where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In the present case, Walsh has failed to establish that any genuine issue of material fact remains unresolved.[2] Rather, the only matter left to be resolved is a question of statutory construction. Where a decision turns on the application of a statute to undisputed facts, the decision is one of law and must be decided by the court. *Stissi v. Interstate & Ocean Transport Co. of Philadelphia,* 765 F.2d 370, 374 (2d Cir.1985). Here, the court must decide whether Walsh is a "parent" under 38 U.S.C. § 765(9)(e). That subsection provides that paternity may be established through the use of service department or other public records "which show that with his [the father's] knowledge the insured was named as the father of the child."

During discovery several service department records were produced, two of which designate Walsh as the father of Thompson. The first of these documents, a Beneficiary Designation Card, was drafted on August 24, 1985 and contains Thompson's signature. The second document, a Report of Casualty, was drafted by service personnel following Thompson's death.[3]

---

**2.** In response to Whitney's Motion for Summary Judgment, Walsh argues that summary judgment is not appropriate because he has reason to believe certain signed writings exist either in the possession of the University of Kansas Medical Center or the Kansas City, Missouri Police Department which would establish that he (Walsh) is the "parent" of Thompson. In accordance with 38 U.S.C. § 765(9)(a), a father of an illegitimate child can establish paternity through a signed writing created during the child's lifetime. However, Walsh acknowledges that these writings are not in his possession and have not been produced by the above-named parties. *See* Memorandum in Opposition at 7–9. Walsh then asserts that the medical center and the police department have failed to produce all the documents they have pertaining to Thompson. No factual basis is given for the allegation. Rather, Walsh simply suggests that the parties "should be queried about these documents [which are believed to establish paternity] and, until a satisfactory explanation of their absence is obtained, summary judgment on these issues should not be granted." *Id.* at 9. Barring any factual basis for this assertion, the court is remiss to find a genuine issue of material fact as to the existence of these documents. The medical center and the police department were asked to produce any and all documents in their possession that pertained to Thompson. With neither party having an interest in the outcome of the case, there is no reason to believe that the document request was not fully complied with.

Walsh also seeks to raise questions about the completeness of a church record of baptism that Whitney has in her possession. Under 38 U.S.C. § 765(9)(d), paternity may be established through a certificate of baptism. During discovery Whitney produced a copy of Thompson's certificate of baptism. The certificate does not indicate that Walsh is Thompson's father. In fact, the certificate does not provide a place to list the names of the child's parents. At the time the certificate was produced, Walsh did not object to the fact that a copy of the certificate was provided. In challenging the motion for summary judgment, Walsh, for the first time, argues that he cannot concede that the baptismal record cannot establish his paternity. He reasons that the copy produced "appears to be incomplete" because the names of the parents do not appear on the certificate. *Id.* at 7. Again, the court finds Walsh's assertion unbelievable. If Walsh had some question about the completeness of the certificate, he promptly should have requested that the original be produced.

**3.** In addition to these two documents, Walsh produces a third service department record with his Memorandum in Opposition. *See* Exhibit A at 3. This document, one page of an application form Thompson filled out for the Missouri National Guard, appears to have been obtained by Walsh after Whitney filed her motion for summary judgment. Walsh does not indicate whether the form was filled out by Thompson, himself, or by a third party. In discussing the importance of this and the other two service documents, Walsh advances the same argument.

Whitney argues that Walsh has not fulfilled the requirements of subsection (e), because the two service documents he relies on fail to establish that "Walsh was, *with his knowledge,* named as the father of Thompson." (Emphasis in original text.) *See* Memorandum in Support at 19. Based on the subsection's language, Whitney contends that Walsh cannot establish paternity unless the service department document shows 1) that Walsh knew he was being named as the father *at or before the time* the document was created; and 2) that Walsh's knowledge is evident from the face of the document. Whitney states that both documents fail to indicate, on their face, that Walsh knew he was being named as Thompson's father. At best, Whitney argues, Walsh did not know his name·appeared on service department documents until after the fact. To pinpoint the time at which Walsh acquired the requisite knowledge, Whitney relies on Walsh's own deposition testimony:

> Q: Any other service department or other public records, which show that you were, with your knowledge, named as the father of Richard Samuel Thompson?
> A: To my knowledge, no. I went—when he [Thompson] went to the service, he told me that he put me down as father.
> Q: He told you that?
> A: Yes, he did.

*See* Memorandum in Support at 18.[4]

Walsh, in finding that he establishes paternity under the terms of subsection (e), subscribes to a vastly different interpretation of the statutory definition than that set forth by Whitney. Walsh initially argues that the language in subsection (e) is ambiguous and is subject to more than one meaning.[5] However, he continues, what subsection (e) does not say is that a service department record "must show on its face that a putative father knew he was being listed as such." *Id.* at 10. If this were true, Walsh suggests, then all service department documents would provide a place for the putative father to sign or the service would require the father to write a letter attesting to his knowledge. As to Whitney's further assertion that subsection (e) requires the individual to have prior or contemporaneous knowledge of the fact that he is being named as a parent, Walsh argues that it should be sufficient that the father "knows that he is being or has been designated as such.... It is unrefuted that Richard Walsh knew that Richard Thompson was listing him as his father in service documents." *Id.* at 11–12.

It is a recognized principle of statutory construction that where the language of a statute is plain, clear, and unambiguous, the court should be guided by the ordinary meaning of the words used. *U.S. v. Jones,* 811 F.2d 444, 447 (8th Cir.1987); *Blue Cross Association v. Harris,* 622 F.2d 972, 977 (8th Cir.1980). Where a statute states what a key term "means," all other meanings, ordinary or otherwise, shall be presumed excluded. *Johns–Manville Corp. v. U.S.,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Statutory definitions are given controlling effect, because they are regarded as "authoritative evidence of legislative intent." *Sierra Club v. Clark,* 755 F.2d 608, 613 (8th Cir.1985).

This is a case of first impression because the language of 38 U.S.C. § 765(9)(e) has never been scrutinized by a court of law. Section 765(9) was added to the Act in 1971

---

**4.** Walsh also acknowledges that he was advised by Thompson that he (Walsh) was listed as Thompson's father. In Walsh's Memorandum in Opposition, he states: "Richard Thompson informed Richard Walsh that he named him as his father in school documents and military documents." Memorandum in Opposition at 6. None of the school documents obtained name Walsh as Thompson's father.

**5.** Walsh suggests that there are three possible constructions of the subsection: 1) that proof of paternity may be established by service department records; 2) that proof of paternity may be established by public records "which show that with his knowledge the claimant was named as father to the child"; and 3) that proof of paternity may be established by service department records or public records and "either category must show that with his knowledge the claimant was named as father of the child." *See* Memorandum in Opposition at 9.

in an effort to see to it that the provisions of 38 U.S.C. § 770 (setting out how insurance proceeds are distributed where no beneficiary is named by the insured) were applied "uniformly throughout the United States, and thus serve to lesson [sic] the amount of litigation in such cases." S.Rep. No. 545, 92nd Cong., 1st Sess. 5, *reprinted in* 1971 U.S.Code Cong. & Admin.News 2127, 2130.

In drafting subsection (e), Congress borrowed nearly verbatim from the language of the Federal Code of Regulations. Under the Department of Veterans Affairs Pensions, Compensation, and Dependency and Indemnity Compensation, 38 C.F.R. § 3.210(b)(iii) (1963), it provides that an illegitimate child may establish a relationship with his father through

> "[i]nformation obtained from service department or public records, such as school or welfare agencies, which shows that with his knowledge the veteran was named as the father of the child."

Congress' rationale for relying on the regulatory language as a guide in drafting 38 U.S.C. § 765(9) was that it had found from experience such secondary evidence was "sufficient to establish paternity of illegitimates." *Id.* at 2130.

■ The specific language of 38 U.S.C. § 765(9) provides a restrictive definition of "parent." This intent is reflected in the section's introductory phrase: "The term 'parent' *means* a ... father of an illegitimate child but *only if* (a)...." (Emphasis added.) When a definition declares what a term "means," and not what a term "includes," it excludes any meaning that is not stated. *Adams v. Bowen*, 872 F.2d 926, 928 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989); 2A Sutherland Statutory Construction § 47.07 (C. Sands rev. 4th ed. 1984). Thus, a father of an illegitimate child is a "parent" only if he complies with one of the five provisions set out in 38 U.S.C. § 765(9). In applying the restrictive definition, it is apparent that while all "parents" are fathers not all fathers are "parents" under the Act. Consequently, the fact that it is undisputed that Walsh is the father of

Thompson has no bearing on the outcome of this case.

Congress, in giving "parent" a restrictive definition, probably was attempting to see to it that evidence presented in support of a claim of paternity bear an indicia of reliability so that putative fathers would not be saddled with the expense and inconvenience of responding to frivolous and unsubstantiated claims of paternity. Least one should forget, subsection (e) is based on language directed at the converse situation—where a child is making a claim for benefits against a service person.

■ Turning to the language of subsection (e), the court finds Walsh's construction of this provision in direct contravention of the language Congress adopted. If the court were to follow Walsh's reasoning, subsection (e) would provide that proof of paternity could be established from service department or other public records without further qualification. To read subsection (e) this way would require this court to treat as surplusage, and without meaning, the phrase "which show that with his knowledge the claimant was named as father of the child." This, the court will not do. A statute should be construed as a whole, thereby giving effect to every word used. *Beisler v. Commissioner of Internal Revenue*, 814 F.2d 1304, 1307 (9th Cir. 1987); 2A Sutherland Statutory Construction § 46.06 (C. Sands rev. 4th ed. 1984). A court should avoid construing a statute that would render any part of its language superfluous or void. *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1280 (8th Cir. 1988). This is particularly the case where a proposed statutory interpretation would have the effect of reading out a "specific condition or trigger to the provision's applicability." *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 822 F.2d 104, 113 (D.C.Cir. 1987).

The knowledge requirement of subsection (e) is a condition precedent to the use of secondary evidence in the form of ser-

vice department or other public records.[6] Had Congress thought that this secondary evidence was independently reliable, subsection (e) would not include the additional qualifying language.[7] Clearly, Congress did not believe these documents, by themselves, were sufficiently reliable. This view is consistent with that of 38 C.F.R. § 3.210(b)(iii), upon which subsection (e) is modeled.

The suggestion by Walsh that reading subsection (e) to require that the putative father have knowledge and, further, that his knowledge appear on the face of the record "flies in the face of reason" is flawed. Subsection (e) is not a directive to the service to revise their forms to include a signature line for putative fathers, as Walsh would like the court to believe. All that subsection (e) provides is that *in the event* a putative father seeks to establish paternity through the use of service department or other public records, these records must show that the father knew he was being named at the time the record was created. Were the court to read subsection (e) in any other way, it would read out the requirement of knowledge—a criterion Congress deemed necessary to the use of such secondary evidence.

Since Walsh's own testimony establishes that he was not aware that Thompson named him in service department records until after the fact, Walsh has failed to prove that he is a "parent" of Thompson under 38 U.S.C. § 765(9)(e). Therefore, Whitney is the sole "parent" of Thompson and is entitled to the remaining portion of the insurance proceeds in accordance with 38 U.S.C. § 770.

Accordingly, it is

ORDERED that defendant Whitney's Motion for Summary Judgment, filed July 12, 1990, is granted. It is further

ORDERED that the remaining one-half (½) portion of the insurance proceeds, presently on deposit with the Court Registry, be released to defendant Whitney, together with any accrued interest to date.

---

**6.** The only other secondary evidence allowed to establish paternity are a "certified copy" of the public record of birth or a church record of baptism, noted under subsection (d).

**7.** The remaining provisions of 38 U.S.C. § 765(9) allow a finding of paternity without further qualification. The evidence relied on in the subsections (a)–(c) is inherently reliable. They include: (a) an acknowledgement of paternity by the father in writing; (b) a judicial order that the father pay child support; and (c) a judicial decree that the father is the parent of the child.