**Robert WOOD, Jr., Plaintiff**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

No. 95–1061–Civ–Orl–3ABF(18).

United States District Court, M.D. Florida, Orlando Division.

Jan. 27, 1997.

dispositive of the defendant United State's sec-

Rebecca H. Alexander, Hill & Ponton, P.A., Orlando, FL, for Plaintiff.

I. Randall Gold, U.S. Attorney's Office, Middle District of Florida, Orlando, FL, for Defendant.

**ORDER**

BAKER, United States Magistrate Judge.

This matter is before the Court for plenary consideration. This Court has jurisdiction

tion 7432 liability.

under 42 U.S.C. § 405. The case has been assigned to the United States Magistrate Judge under 28 U.S.C. § 636(c) based on the consent of the parties and pursuant to the Court's Order of Reference (Doc. No. 15).

## PROCEDURAL BACKGROUND

Plaintiff is seeking social security disability benefits based on his visual impairment. The administrative proceedings leading to this action began on November 5, 1992, when claimant protectively filed an application for disability benefits (R. 87–90). The application was administratively denied (R. 91–92). A new application was filed July 15, 1993 (R. 93–96), denied administratively on October 8, 1993 (R. 97–98) and request for reconsideration filed and denied by December 30, 1993 (R. 99–102). A hearing was requested, and held on December 7, 1994 (R. 50–86). Subsequently, the Administrative Law Judge ("the ALJ") James R. Ciaravino rendered a decision, determining that Plaintiff was not entitled to a period of disability and disability insurance benefits under the Social Security Act (R. 33–37).

Administrative review was requested from (R. 6–10) and denied by the Appeals Council on August 23, 1995 (R. 4–5). This action for judicial review of the agency action followed on October 19, 1995 (Doc. No. 1).

The Court has considered the record and the briefs and oral arguments of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the cause is **REMANDED** to the Defendant for further administrative proceedings concerning the onset date of disability.

## NATURE OF THE DISABILITY CLAIM

### A. Basis for Claimed Disability

Though Plaintiff has alleged other medical conditions in his applications for disability benefits, for purposes of this action, Plaintiff has acknowledged that he meets the fully insured status requirements for disability benefits based upon statutory blindness only, pursuant to 20 C.F.R. 404.130(e).

### B. Summary of Evidence before the Administrative Law Judge

The ALJ has found, and Defendant does not dispute, that Plaintiff has a rare condition called blepharospasm, because of which his eyes close involuntarily. Plaintiff testified at the hearing regarding photosensitivity (R. 61, 74) and the frequency and duration of the involuntary closures (R. 68 et seq.). Plaintiff testified that his eyelids flutter uncontrollably (R. 64) and, when his eyes close, they stay closed for "two seconds to two minutes," and they have remained closed "as long as four or five minutes at a time" (R. 68). Plaintiff testified that his condition was getting progressively worse (R. 69).

Plaintiff testified that he can not drive and had an automobile accident due to the closures (R. 68, 298). He no longer can keep his eyes open to watch television or read a book (R. 70).

The medical evidence relating to the allegations of vision problems shows that Plaintiff complained about his "eyes blinking" in 1988 (R. 182). Beginning in 1990, Plaintiff was treated at the Florida Eye Clinic (R. 212). At his first visit, he complained of light sensitivity, tearing and difficulty seeing to read (R. 213). The treatment notes indicate a diagnosis of blepharospasm (R. 215).

On January 24, 1991, the Plaintiff visited neuro-ophthalmologist Lyn Sedwick, M.D., complaining of episodic frequent blinking and photophobia. She felt that he might be in the earliest stage of blepharospasm, but did not issue a firm diagnosis (R. 234–235).

Neil Gross, M.D. treated Plaintiff for blepharospasm during 1991 and 1992 (R. 297–300). Treatment notes in 1992 (R. 297–300) reveal a diagnosis of blepharospasm and note that on March 24, 1992, Plaintiff hit a tree while driving (R. 298).

Thereafter, Plaintiff was treated by James Podschun, O.D., optometrist, who noted "chronic blepharospasm" (R. 303). Dr. Podschun noted that testing and examination revealed that Plaintiff had a "bilateral field loss secondary to his lid positioning" (R. 312). Various medications were utilized to attempt to control the spasms, without success (R. 312).

A wide variety of health professionals have evaluated Plaintiff and observed the spasms. Dr. Sam Ranganathan, M.D. noted "spasm of the eye lids seen" (R. 305–306). Dr. Victor Roberts, M.D. noted that patient reported "spasms" and was unable to drive due to blephoraspasms (R. 238). On April 21, 1993, Plaintiff's family doctor noted that Plaintiff was "disabled now with blepharospasm" (R. 183). In a September 1993 consultative examination, Nitin Hate, M.D. noted that Plaintiff "constantly blinks his eyes and at times closes them tightly" (R. 314).

On February 18, 1993, ophthalmologist Robert Feldman, M.D. performed a consultative eye examination. He found "abnormality/limitation in peripheral field of vision on confrontation testing" in both eyes (R. 307). Plaintiff's field of vision at that time was limited to the lower half and center of the field (R. 310–311). Feldman suggested surgery might be needed (R. 307).

Throughout this period of time, Plaintiff's vision was measured repeatedly. On January 24, 1991, Plaintiff had a right corrected vision of 20/30 and left corrected vision of 20/50 (R. 234). On February 18, 1993, Plaintiff had corrected vision of 20/40 in both eyes (R. 306). On March 22, 1993, corrected vision was measured as 20/30 in both eyes (R. 307). In July of the same year, correctable vision was reported as 20/25 in both eyes (R. 312). On September 8, corrected vision of 20/40 in both eyes (R. 314).

On June 1, 1994, Plaintiff was examined by Robert S. Gold, M.D., an ophthalmologist specializing in adult eye muscle disorders (R. 1;369). Dr. Gold diagnosed "severe debilitating essential blepharospasm bilaterally" (R. 369), and noted that Plaintiff "cannot even open his eyes for more than a split second to see." Dr. Gold recommended BOTOX injections for Plaintiff (R. 369). Plaintiff completed a course of the injections, with minimal results (R. 363–365). On August 30, 1994, Dr. Gold reported that Plaintiff could keep his eyes open for "one to two seconds only" (R. 364). Visual acuity was 20/200 plus 1 and 20/FC @ face, and Dr. Gold noted this was "difficult to assess" due to blepharospasm (R. 364).

On September 2, 1994, Dr. Gold noted some improvement, and tested acuity at 20/100 and 20/80. Dr. Gold's treatment notes state that Plaintiff still had "significant blepharospasm" (R. 360).

On October 7, 1994, Plaintiff was seen by Thomas Kroop, M.D., an ophthalmologist. Dr. Kroop noted that Plaintiff had recently undergone the injection of 10 units of Oculinum which decreased his spasms (R. 371). Even so, Dr. Kroop observed "frequent gentle lid closure" and "significant blepharospasm" (R. 371). Visual acuity was best corrected to 20/40 and 20/60, with Dr. Kroop noting: "Attempt at manifest refraction could not improve him, but with the eyelid closure this was difficult" (R. 371).

On February 13, 1995, the ALJ determined that Plaintiff has blepharospasm, but since Plaintiff has a visual acuity of 20/30 and a visual field significantly better than that required for a finding of blindness under the statutory criteria, Plaintiff was not "statutorily blind" within the meaning of the Social Security Act, and was therefore not entitled to disability benefits (R. 36–37).

On request for review of the hearing decision, Plaintiff submitted a questionnaire completed by Dr. Gold on March 7, 1995 (R. 13). Dr. Gold opined that Plaintiff's condition was equal in severity to the Social Security Listing for visual impairments in that "blepharospasm causes functional blindness due to inability to open eyes for more than a second or two. Mr. Wood's condition was and is very severe and recurrent" (R. 13). Dr. Gold stated that Plaintiff was "functionally blind" and in response to questions regarding the visual efficiency and visual fields of the eyes, stated: "[I]t has been impossible to do a formal visual field test on this patient due to inability to open his eyes for a prolonged period of time" (R. 12). Dr. Gold confirmed his diagnosis of "severe essential blepharospasm," noting symptoms of "severe, debilitating eye closure and inability to open eyes for more than a split second" (R. 12).

### III.  STANDARD OF REVIEW AND ISSUES

■ The scope of this Court's review is limited to determining whether the ALJ ap-

plied the correct legal standards, *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, and it must do more than create a suspicion of the existence of the fact to be established; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Walden v. Schweiker,* 672 F.2d 835, 838–839 (11th Cir.1982).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen,* 826 F.2d 996, 1000 (11th Cir.1987). Even if the Court finds that the evidence weighs against the SSA's decision, the Court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker,* 642 F.2d 799, 800 (5th Cir.1981); *see also Harwell v. Heckler,* 735 F.2d 1292 (11th Cir.1984), *Martin v. Sullivan,* 894 F.2d 1520 (11th Cir.1990). The Court may not reweigh the evidence or substitute its own judgment, even if the Court finds that the weight of the evidence is against the SSA's decision. *Martin,* 894 F.2d at 1529. While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions about the proper standards to be applied in evaluating claims. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986); *Welch v. Bowen,* 854 F.2d 436, 438 (11th Cir.1988).

The only issue presented in this case is whether Plaintiff's condition meets the statutory condition for blindness. This includes a factual issue—whether the ALJ's determination that Plaintiff is not statutorily blind is supported by substantial evidence; and a legal issue—whether the ALJ properly interpreted the statute to exclude Plaintiff's condition.

Statutory blindness is defined as:

... central visual acuity of 20/200 or less in the better eye with the use of correcting lens. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less.

42 U.S.C. § 416(i)(1)(B); 20 C.F.R. § 404.1581 (1995).

Here, there is substantial evidence to support the ALJ's determination that Plaintiff's visual acuity, *when it could be measured,* was better than that required in the listing. The record, however, indicates that the blepharospasm was chronic and progressive, with the most recent ophthalmology examinations noting difficulties assessing Plaintiff's visual acuity and field of vision. In fact, Dr. Gold, a treating physician, opined that he was "unable to assess" the visual efficiency of the better eye, due to the severe nature of Plaintiff's blepharospasm (R. 12).

The ALJ relies on the visual field testing performed by Dr. Feldman in March 1993 to conclude that Plaintiff's field of vision is greater than that allowed by the statutory criteria. However, Dr. Gold opined, two years later, that it was "impossible to do a formal visual field test" on Plaintiff, due to Plaintiff's inability to open his eyes for a prolonged period of time (R. 12). Thus, the most recent information from a treating physician establishes that the disorder had progressed to the point of functional blindness.

■ The question thus becomes, are the statutory criteria met when a claimant is unable to undergo testing due to a medically established condition which repeatedly prohibits sight? Under the circumstances presented in this case, the Court holds that they are.

As a treating physician, Dr. Gold's findings were entitled to be given substantial weight. *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir.1985) (per curiam). The Defendant's failure to consider Dr. Gold's finding that testing was now "impossible," coupled with the universal reports of chronic, progressive spasms,[1] compel a conclusion that the ALJ's finding that Plaintiff's visual field

---

1. The government conceded at oral argument that there was no indication in the record that

Plaintiff was a malingerer, or that his condition was not genuine.

testing did not meet the statutory criteria is not supported by substantial evidence.

The case law interpreting the statutory blindness criteria is sparse. Neither the parties nor the Court were able to locate any reported decisions interpreting the statute to include or exclude blepharospasm, either generally or in a specific case with characteristics similar to Plaintiff.

In construing the statute with respect to other disorders, both the Eight and Ninth Circuits have taken a strict, literal interpretation of the statutory criteria to exclude persons with impaired vision due to a stroke, *Eckholm v. Shalala*, 2 F.3d 1154, 1993 WL 311961 (8th Cir.1993) (unpublished opinion) and a plaintiff neurologically unable to process visual information, *Adams v. Bowen*, 872 F.2d 926 (9th Cir.1989).

Plaintiff's situation is distinguishable from both of these cases. In *Eckholm*, the claimant argued that he suffered from a narrowed field of vision, blind spots and difficulty focusing. Recent testing of that claimant, however, revealed 20/30 and 20/20 vision. 1993 WL 311961. Unlike Plaintiff here, the claimant in *Eckholm* was able to be tested.

In *Adams*, the claimant's difficulty lay in processing the visual information received. 872 F.2d at 927. Plaintiff suffers no such difficulty.

Here, the uncontradicted evidence, supported by numerous physicians of various specialties who examined Plaintiff, establishes that Plaintiff does not have control over his eyelids. Unlike *Eckholm* and *Adams*, Plaintiff does not have trouble focusing on and interpreting what he sees—he is without control of the *opportunity* to see anything at all. Thus, these decisions do not provide guidance to the Court on the question of blepharospasm.

Plaintiff's visual acuity and field of vision during a "spasm" can be characterized as zero. That is, during the period of time Plaintiff's eyes are closed, which can and has lasted for as long as four to five minutes, according to uncontradicted testimony,[2] he is completely unable to see anything at all. The spasms are chronic and occur with increasing frequency—from a minimum of four or five times per hour to being unable to open his eyes at all for more than a split second.

There is no "correcting lens" for this condition. Plaintiff has tried BOTOX injections, without lasting success. Due to his other medical problems, he has been told that he is not a candidate for surgery (R. 70). He cannot drive. He cannot read. He cannot watch television. By all accounts, the condition is severe, debilitating, chronic and progressive, according to the medical evidence before the agency.

Jonathan Swift reminds us that there is none so blind as those that will not see. Due to Plaintiff's severe blepharospasm, Plaintiff will not and can not see. Plaintiff's inability to open and close his eyes at will necessarily limits his field of vision hundreds and hundreds of times a day.

Blepharospasm, like many diseases, manifests itself in varying levels of severity that may change over time for better or worse. Some victims are more amenable to treatment than others. The Court does not hold that the condition itself, without evidence of severe and debilitating visual limitations, constitutes statutory blindness. The Court holds only that *this* Plaintiff's severe blepharospasm has resulted in symptoms that constitute a "limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees." The ALJ's finding to the contrary is not a supportable interpretation of the statute based on the substantial evidence of record and is **REVERSED**. The case is **REMANDED** for a determination as to the date of onset.

---

**2.** Plaintiff's credibility was not challenged by the ALJ, and, in fact, the record supports Plaintiff's description of his symptomology and limitations.